*The Bank of Missouri vs. Benoist & Hackney.*

## THE BANK OF MISSOURI vs. BENOIST & HACKNEY.

1. An action for money had and received may be maintained for currency.

2. On a promise made by A. to B. on a valuable consideration, for the benefit of C., can C. maintain an action?

3. A demand is not necessary to entitle a party to recover money deposited with the Bank, after the Bank had rendered an account claiming the money as her own.

4. An express demand is necessary to entitle the depositor to recover 20 per cent. per annum from the Bank for failing to pay the deposit.

5. It is not every failure by the Bank to comply with its engagements that will subject it to the penalty of 20 per cent.

In what case is it liable or exempt?

## ERROR to St. Louis Common Pleas.

POLK, *for Plaintiff, insists:*

1. The court below erred in overruling defendants' motion to exclude the deposition of A. P. McCready. Nightingal vs. Duisme, 5 J. Bur., 2594; Perkins, adm'r. vs. Dunlap, 5 Greenleaf's R., 268; 1 Chit. Pl., 384, and notes x and y; 1 East., 1; 2 W. Blk. Rep., 684.

2. The court below ought to have given the first instruction prayed by defendants' counsel, and committed error in refusing it. In this instruction, the court is merely asked to tell the jury that

the plaintiffs must prove that the defendant was indebted to them, as they had charged in their declaration—or, in other words, that they must prove the allegations of their declaration.    With the general issue in, I can hardly imagine how it could be supposed that the plaintiffs could recover *without proof*, and proof, too, commensurate with the claim asserted by them.

3. I will *consider the second instruction* prayed by defendants' counsel and refused by the court, and the third instruction given by the court, together; for they both refer to the same matter and involve the same principles.

And I maintain that the Court of Common Pleas committed error both in refusing the first and in giving the last.

The first asserts, that if currency was deposited by the defendant with plaintiffs, they cannot recover in this action, unless defendant received it as specie or converted it into specie.— The other asserts, that plaintiffs cannot recover unless, after the balance was struck in plaintiffs' bank book, and before the institution of the suit, defendant undertook to pay in specie all sums then on deposit as currency.

That the first instruction is right, I refer to the argument and the authorities cited on the admissibility of McCready's deposition.

That the other instruction is *wrong*, is evident from the following considerations :

First. In the first place, the instruction gives to an agreement which has no consideration to support it, the effect of changing currency into specie.    For it does not require the undertaking which it makes potential to that extent and to that effect to be based upon any consideration whatever.

Second. In the second place, for the balance in her hands on the 27th of May, 1842, which was currency or bank notes, the Bank could not be responsible in specie or money—because any agreement by which she undertook to consider such currency as specie, and thereby to render herself liable for a larger amount by from 3 to 5 per cent.—even supposing any such agreement to have been proved in this case—would have been without consideration, and therefore not binding on her. - Marks vs. the Bank of Missouri, 8 Mo. R., 316.

4. The third and fourth instructions prayed by defendant's counsel, and refused by the court, assert the converse of the proposition asserted in the second instruction given by the court.

The court erred therefore in *refusing* the *two former*, for the same reasons that it erred in giving the *latter* one.

On this point, therefore, I refer to the argument and authorities adduced on the 7th point, which is upon the second instruction given by the court.

5. The first instruction given by the court below is erroneous, because it takes for granted facts which were not proved.

The bill of exceptions nowhere shows either that the plaintiffs ever made any *demand* on defendant for the balance of deposits in her possession, or that the defendant ever refused to pay the same when demanded.    Yet all this is expressly and fully assumed in the instruction given.

And that it is error in the *Nisi Prius* Judge to give an instruction when there is no evidence upon which to predicate it, see O'Fallon vs. Boismenn, 3 Mo. Rep., 405; Vaulx vs. Campbell, ex'r., 8 Mo. Rep., 224.    That a demand was necessary, and that the interest of 20 per cent. after *proof* that a *demand* had been made, see section 35 of the Bank charter.

Again, we have seen that the balance in favor of plaintiffs in the hands of defendant was payable in *currency*.    Now, even though there had been a demand proved of this balance, and refusal to pay it by the defendant, still, by the 35th section of the Bank charter, this would not render the Bank liable to pay interest of 20 per cent. upon the amount, unless, indeed, such balance had become *specie* in the hands of defendant, and had been demanded and refused after that time.

But that such balance had not become specie in the eye of the law, is shown by the argument and authorities adduced under the fourth point.

6. But this being an action brought by depositors against their banker, for a balance of deposits, in order to entitle them to recover at all, it was necessary to have proved a demand.    White vs. the Franklin Bank, 22 Pick. Rep., 181.

And this point was put to the court below, and its action thereon is presented by the record so as to be a matter upon which error can be assigned in this court.

The counsel of defendant, (Mr. Hudson) on the close of plaintiffs' case, moved the court to non-suit the plaintiffs, on the ground that there was no evidence to sustain the declaration. This motion presented two demands to the court—not only, first, to non-suit the plaintiffs, but also, secondly, to declare to the jury that there was no evidence to sustain the declaration. But the court refused to allow both demands—refused to say that there was no evidence to sustain the declaration, as well as to non-suit the plaintiffs.

Now, if the proof of demand was necessary to support the action—and we have seen from the authorities cited that it was— then it was true in law and in fact, that there was no evidence to sustain the declaration, and the Court of Common Pleas erred in refusing so to declare to the jury.

7. The court below erred to the prejudice of the defendant in giving the second instruction.— 1 Chit. Pl., 5 and 6, Marchington vs. Vernon, cited in note c, to 1 Bos. & Pul., 101; Martyn vs. Hind, Doug., 142, and Cowper, 437; Carnegie vs. Waugh, 2 Dow. and Ry., 277; (16 Eng. C. L. R., 85;) Fenner vs. Mears, 2 Blk., 1269; Garrett, et al. vs. Hendley, 4 B. & C., 664; (10 Eng. C. L. R., 438.)

GAMBLE & BATES, *for Defendants, insist:*

1. As to the bill drawn by Anderson on Durst, and sold to the Bank, there was no privity between the Bank and Benoist & Hackney, and so the Bank could have no interest in any contract between Anderson and B. & H., for the protection of the bill in New Orleans.

2. But the contract was never fulfilled on the part of Anderson. He did not furnish the money in St. Louis to take up the bill. He did advance some money, but not enough, and for that he might have maintained an action for money had and received. But in that action, B. & H. would have had a good plea of set-off, as the same testimony shows that Anderson owed them $10,000.

3. The action of assumpsit on money counts may be maintained for a transaction and the settlement of an account in currency. 9 Wheat. R., 651; 6 Mass. R., 182; 7 J. R., 132; 6 Cowen, 299; 7 Cowen, 662.

4. The instructions are very defectively stated in the transcript. The first instruction on the part of the defendant, and which seems to be refused, we suppose is relied upon. That instruction, in the form in which it now appears, is a trite legal truism, the refusal of which, if it were indeed refused, could not prejudice the defendant, for the other instructions plainly show the ground on which the court put the case.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of assumpsit on the common counts, brought by Benoist & Hackney against the Bank, for money deposited. Pleas, non-assumpsit, set-off on the general counts, and payment. On the trial, the plaintiff obtained a verdict and judgment.

Benoist and Hackney deposited in the Bank of Missouri depreciated bank notes, called, in the language of those days, "currency." There were dealings to a large amount between the defendants in error and the Bank. The accounts were kept in currency, and currency consisted of

34

bank notes which were current, yet from 3 to 5 per cent. less in value than specie. During the time of these dealings, J. J. Anderson drew a bill on J. P. Durst in New Orleans for $3000, and Benoist & Hackney agreed with Anderson to protect this bill. The bill was discounted by the Bank, but it does not appear that she had any knowledge of the existence of the contract between Benoist & Hackney and Anderson at the time the bill was discounted by her. The bill being dishonored, it was taken up by the Bank, and she charged the amount of the bill and damages, being $3,300, to Benoist & Hackney, and withheld that amount of their deposits from them. For this sum, this suit was brought. The consideration of the promise made by Benoist & Hackney to Anderson was a bill for $3,150, drawn on the St. Louis Perpetual Insurance Company. This bill was dishonored, and afterwards taken in by Anderson, who paid from 8 to 1200 dollars to Benoist & Hackney, and gave other bills to them for the balance, which it does not appear were ever paid. At the time of these transactions, Anderson was largely indebted to Benoist & Hackney, and before the promise above mentioned was made by them, they had directed their clerk not to credit Anderson without good security.

Before the institution of this suit, the Bank had ceased to deal in currency, and had given notice of that fact. There was no evidence of an express demand made by Benoist and Hackney on the Bank before the bringing of the suit. After the plaintiffs' evidence had all been produced; the defendant moved the court to instruct the jury that on the testimony in the cause the plaintiffs were not entitled to recover. This instruction was refused. The defendant then asked the following instructions, viz:

1. "The defendant prays the court to instruct the jury that unless they are satisfied from the evidence that, at the time of the institution of this suit, the defendant was indebted to the plaintiffs for one of the causes specified in the declaration, they should find for the defendant."

2. "That evidence of the defendant having on deposit current bank notes belonging to the plaintiffs, will not support a declaration for money, unless they should be satisfied that such bank notes were received by the Bank as money, or by the defendant converted into money, either of which it is incumbent on the plaintiffs to prove."

3. "If the jury believe from the evidence that John J. Anderson paid the amount of the bill of exchange, negotiated at the Bank by said Anderson, to the plaintiffs, they should find for the defendant."

4. " If the jury believe that the money and checks spoken of by Anderson were paid by him to the plaintiffs, for the purpose of settling the bill aforesaid, that the said plaintiffs had no right to appropriate the same to any other purpose;" which were refused.

The court thereupon gave the following instructions, viz:

1. " That if the jury believe from the evidence that the defendant received money on deposite of the plaintiffs, and refused to pay the same to them, when demanded, they will allow the plaintiffs interest on the same from the time of such demand and refusal to the present time, at the rate of twenty per cent. per annum."

2. " There is not before the jury any lawful and competent testimony proving or tending to prove that the two items of $3,000, and one of $300, charged against the plaintiffs in the bank book, (which has been given in evidence) are properly chargeable against said plaintiffs."

3. " That the jury will find for defendant, unless they believe from the evidence that the defendant, subsequent to the 27th of May, when the balance was struck in plaintiffs' bank book, and prior to the institution of this suit, undertook to pay all sums then on deposit in money."

Exceptions were taken to the refusing and giving these instructions.

The first question presented for our consideration is, whether an action for money had and received could be maintained in this case, as the deposits made by the plaintiffs consisted of bank notes of less value than specie. There is no doubt of the general principle that in order to maintain an action for money had and received, it must appear that money has been received for the use of the plaintiff. Thus, it has been held that the action will not lie for stock; but, on the other hand, it has been said it will lie for foreign securities or paper money, if there has been an opportunity of converting them into specie. 1 Leigh, N. P., 46. So when property received by the defendant is readily converted into money, and his conduct affords a presumption he has so converted it, it may be recovered in this form of action: Longchamp vs. Kenney, Doug., 137. It has been determined that the action will lie on a note payable in foreign bills. Young vs. Adams, 6 Mass., 182. Although currency was a little below specie in value, we all know that it was regarded as money, and the resolution of the Bank to cease dealing in currency, afforded ample inference that all such paper as constituted currency had been converted into specie. It was said in the argument that this Court, in the case of Farwell vs. Kennett, 7 Mo. Rep., had decided that a bill payable in "currency" was not a bill payable in money, so as to make it a negotia-

ble instrument under our statute. That opinion is adhered to and does not conflict with any thing said herein. The present question does not depend upon the quality of the notes, whether negotiable or not, but whether currency was regarded as money by the parties. A bill of exchange, if restricted to a mode of payment liable to any uncertainty in the amount or value to be paid, is not negotiable by the statute or by the custom of merchants. The bill in that case being made payable in currency, and currency being under the value of specie, and its value fluctuating, it could not be considered such an instrument as is made negotiable by the law merchant. But, although in that point of view, currency would not be regarded as money, yet that does not prevent its being so considered in an action for money had and received against a person who detains it from another. 6 Mass. R., 188.

Another question arising in this case is, whether the Bank can maintain an action on the promise made by the defendants to Anderson to protect the bill drawn by him on Durst, which was discounted by the Bank. The position that when one person, for a valuable consideration, engages with another by simple contract to do some act for the benefit of a third, the latter, who would enjoy the benefit, may maintain an action for the breach of such engagement, is supported by a weight of authority in the American courts which we are not at liberty to disregard. Schamerhorn vs. Vanderheyden, 1 John., 139; Felton vs. Dickerson, 10 Mass., 287; Arnold vs. Lyman, 17 Mass., 400; Hall vs. Marston, ib. 574; Elwood vs. Monk, 5 Wen., 235; Farley vs. Cleveland, 4 Cow., 432; Carnegie vs. Morrison, 2 Met., 381. The position, too is not unsustained by the English courts. Dutton vs. Pool, 1 Ventris, 318; which was affirmed in the Exchequer Chamber; 2 Levinz, 212; Chit., 5 and 6. It would seem, however, that the doctrine is now denied in England, if the depositions of the able English Barristers used in the above cited case of Carnegie vs. Morrison as evidence of the law in that country may be regarded as containing a true exposition of the common law. The defendant mostly relies on a memorandum of the case of Marchington vs. Vernon, found in a note to the case of the Felt Makers vs. Davis, 1 Bos. & Pul., 101. In that case, which was assumpsit on a bill of exchange by the holder against the defendant, (assignees of the drawee) who had given a promise to the drawer that they would honor the bill. Buller, J., held, independently of the rule which prevails in mercantile transactions, if one person makes a promise to another for the benefit of a third, that third person may maintain an action upon it. This is all the report of

that case that can be found in the books. It is referred to by Judge Story, in his work on Bills of Exchange, 544 page, who classes it with the case of Laurason vs. Mason, 3 Cranch, 492, and others of like nature, which regard such contracts in the light of a guaranty of a bill of exchange. The promise in this case cannot be so regarded, as it does not appear that the bill was discounted by the Bank on the faith of such guaranty, or that it was even known to the Bank at the time of the discount. If the defendant could recover the amount of the bill and damages at all on this promise, it is not seen how she could under the plea of set-off. Only liquidated demands can be set off. The evidence shows that the consideration of the promise in most part remains executory.— That the plaintiffs have not received it, and even if the defendant can regard the contract as rescinded, and go for the consideration, she certainly can only recover the sum that has been paid. A sum due on a guaranty cannot be set off. 1 Leigh, N. P., 154; Morley vs. Ingles, 33 Eng. Com. Law Rep., 279.

A further inquiry in this cause is, as to the necessity of the demand. It will be borne in mind, that the defendant, after the close of the plaintiffs' evidence, moved the court to instruct the jury that on that evidence the plaintiffs were not entitled to recover. This instruction was refused, and it is contended that on it the question may be raised in this Court. The necessity for a demand, must, in this case, be viewed in a two-fold aspect. First, as to a demand that will entitle them to a recovery at all; and secondly, as to the demand necessary to entitle them to the 20 per cent. per annum damages given by the 35th section of the Bank charter. Viewed in the former, which is the proper one, at the court was called upon to instruct the jury that the plaintiffs could not recover at all, the propriety of the action of the court cannot well be questioned. As the defendant claimed the money sued for as her own, as she had settled the account, and by her statement, in effect told the plaintiffs, it was not theirs; thereby showing that a demand would have been nugatory, and as the law compels no man to do a vain or nugatory act, the evidence of a demand to entitle the plaintiffs to a recovery was amply sufficient to go to the jury. It has been held that a factor's claiming a greater credit than he is entitled to, would give his principal a right of action against him without a demand. Clark vs. Moody, 17 Mass., 148.

The question as to the right to the 20 per cent. damages given by the 35th section of the charter of the Bank, arises under one of the instructions given by the court. That section enacts, "said Bank shall not at

any time suspend or refuse payment of any of its notes, bills or obliga-tions, nor of any money received on deposit in said Bank, when demand-ed by the holder or depositor at the place where the same is made pay-able, or when deposited in gold or silver; and in case of such refusal, the holder of such note, bill or obligation, or the person entitled to re-ceive such money as aforesaid, shall respectively be entitled to receive interest from the time of such demand or refusal at the rate of twenty per cent. per annum until paid." The phraseology of this section is not very perspicuous. The words "or when deposited in gold and silver," would seem to imply that the penalty would only be incurred on failure to pay when the deposit is made in gold or silver. Be that as it may, can it be contended that it was designed to make the Bank pay this for-feiture in every instance of a failure to pay, and under all circumstan-ces? The principal object of this section would seem to be to guard against insolvency and a wanton neglect to comply with her engage-ments. It must have been in the contemplation of the General Assembly that a bank, with the capital allowed the defendant, and being the only one in the State, would have a multiplicity of transactions with business men of all kinds, and that honest differences of opinion as to the rights of the Bank, and those with whom she dealt, would necessarily arise.— Such differences are incident to all human transactions. Was it then in-tended that the Bank, in every instance of litigation of its rights, not-withstanding her good faith and the reasonableness of the ground on which it was maintained, should be mulcted with a heavy penalty in the event of her not sustaining her defence? Must she, in every instance, defend what she considers an unjust demand, at the peril of paying 20, 40 or 100 per cent. damages on the amount claimed? Such a construc-tion would be ruinous to the Bank, and would stimulate men to make unjust demands against her, trusting that the severity of the penalty would compel her to an acquiesence, and thus, a provision that was intend-ed to secure her solvency, would be made a means of her destruction. No doubt the penalty would attach in case of a suspension or of an un-reasonable refusal to comply with her obligations, but we cannot bring ourselves to the belief that when she litigates her rights in sincerity and good faith, and has a reasonable ground of defence against a demand, that she should be subject to the penalty given by the 35th section of the charter. The instruction, therefore, in relation to the 20 per cent. dam-ages, was erroneous, and the refusal of the Bank to pay the deposit, as the 20 per cent. damages were claimed, should have been put to the jury

with the foregoing qualifications. As a penalty was claimed, there should have been an express demand; the demand being a prerequisite necessary to be made in order to entitle the parties to it.

The other Judges concurring, the judgment will be reversed, and the cause remanded.