PORTER *et al.*, *Appellants*, v. WOODS.

Division Two, April 3, 1897.

1. **Trusts:** DECLARATION OF TRUST: ACCEPTANCE. Where a third party, as a matter of accommodation to a syndicate formed to purchase certain land, permitted the title to the land to be placed in him, executing at the same time his notes and a deed of trust on the property for the unpaid balance of the purchase price, and afterward delivered to each member of the syndicate a written declaration of trust in which he recited the conditions of the trust, a member of the syndicate who received the declaration of trust without objection is presumed to have accepted the same, and is bound by the terms thereof, even though he did not inform himself as to their nature.

2. **Principal and Agent:** SCOPE OF AGENT'S AUTHORITY. An agent of a syndicate formed to purchase land, who agreed at the time of purchase, that each member of the syndicate would pay his proportionate share of the notes given for the purchase price of the land when the same should become due, acted within the general scope of his authority as agent.

3. ———: RATIFICATION. A principal, in accepting a contract made by an agent, accepts it as a whole. He can not ratify the part which is to his advantage, and accept its benefits, without also assuming the part that is burdensome.

4. Action: PROMISE FOR BENEFIT OF THIRD PARTY. Where a third party, for accommodation to a syndicate, took the title to land and, under an agreement with the members of the syndicate that they would individually be responsible for payment of the notes, executed notes and a deed of trust on the land for a part of the purchase price, the owner of the notes can maintain an action against the members of the syndicate on this agreement, even though he did not know of its existence at the time he acquired the notes.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED.

*Peak & Ball* for appellants.

(1) The defendant is estopped, by the terms of the declaration of trust which he received, accepted and retained, to deny that he agreed to its terms. *Glenn v. Statler*, 42 Iowa, 107; *Mateer v. Railroad*, 105 Mo. 320; *James v. Clough*, 25 Mo. App. 147; *Crawford v. Edwards*, 33 Mich. 354; *Spaulding v. Hallenbeck*, 35 N. Y. 206; *Trotter v. Hughes*, 2 Kern. 74; *Belmont v. Coman*, 22 N. Y. 438; *Sinclair v. Jackson*, 8 Cow. 585; *Atlantic Dock Co. v. Leavitt*, 54 N. Y. 35; *Hasenritter v. Kirschhoffer*, 79 Mo. 241. (2) Defendant, after accepting the declaration of trust, his only muniment of title, and taking possession of the property and enjoying it for years, can not be allowed to repudiate the portion of his agreement which bound him to pay. *Alvord v. Spring Valley Gold Co.*, 40 Pac. Rep. 27; *State ex rel. v. Harrington*, 100 Mo. 170. (3) Plaintiffs' rights in enforcing the assumption of this debt are precisely the same, as wide and no wider, as Oliphant's rights would be if he had paid the debt and sued defendants on their promise. *Fitzgerald v. Barker*, 85 Mo. 13; Jones on Mort. sec. 741. (4) Defendant and the other members of the syndicate having left the matter of consummating the purchase to their agents,

both the real and apparent authority of the agents was ·
to arrange it as they did; and it was not competent to
prove any private arrangements between defendant and
his agents not disclosed to Oliphant. *McGeoch v.
Hooker*, 11 Ill. App. 649; *Babcock v. Deford*, 14 Kan.
408; *Clydesdale Horse Co. v. Bennett*, 52 Mo. App. 333;
*Meechem Agency*, sec. 283; *Samuel v. Bartee*, 53 Mo.
App. 587; *Baker v. Railroad*, 91 Mo. 152; *Webster v.
Wray*, 17 Neb. 579; *Griggs v. Selden*, 58 Vt. 561.   (5)·
The declaration of trust is a contract to pay these notes,
*pro tanto*.   *Salmon Falls Bank v. Leyser*, 116 Mo. 51.

*Elijah Robinson* for respondent.

(1) The declaration of trust was not only not in ac-
cordance with the terms of agreement, but was in direct
conflict therewith; and what is called by plaintiff's
counsel the assumption clause therein was inserted
without the knowledge or consent of the defendant.
Hence the defendant is not bound thereby.  *Real Estate
Trust Co. v. Balch*, 45 N. Y. Sup. Ct. Rep. 528; *Kilmer
v. Smith*, 77 N. Y. 226; *Albany Savings Institution v.
Burdick*, 87 N. Y. 46; *Bull v. Titsworth*, 29 N. J. Eq.
73; *Stevens Ins. Co. v. Sheridan*, 30 N. J. Eq. 23;
*Parker v. Jenks*, 36 N. J. Eq. 398; *Fuller v. Lamar*, 53
Iowa, 447.   (2)   The undertaking on the part of the
defendant, set forth in the declaration of trust, what-
.ever it may be construed to be, was intended solely for
the benefit of Oliphant, and not for the benefit of the
holder of the mortgage debt.   Consequently plaintiffs
can not maintain this suit.   *State v. Railroad*, 125 Mo.
617; *Howsmon v. Trenton Water Co.*, 119 Mo. 308, and
authorities there cited.   (3)   Plaintiffs have no greater
rights in the premises than would Oliphant, if he had
paid off the note and brought suit on the declaration of·
trust.   If he could not maintain suit, they can not.

*Ellis v. Harrison*, 104 Mo. 278; *Benedick v. Hunt*, 32 Iowa, 30; *Drury v. Hayden*, 111 U. S. 227. Oliphant could not have paid a fifth of the mortgage debt and have maintained a suit against defendant on the declaration of trust without tendering a clear title to plaintiff for an undivided one fifth interest in the real estate. *Olmstead v. Smith*, 87 Mo. 602; *Ankeny v. Clark*, 148 U. S. 357. This he could not do because the deed of trust covering the entire real estate would stand as an incumbrance for the remainder of the debt. (4) Even if Will Woods had been defendant's agent for this particular transaction, he was not a general agent nor was he held out by defendant as such, and, therefore, Oliphant and everyone standing in his shoes were bound to know the extent of his authority.

BURGESS, J.—In May, 1887, L. R. Moore was the owner of a lot of ground in Kansas City, Missouri, which he sold to a syndicate of which the defendant, Woods, Will S. Woods, J. W. Merrill and others were members, for the sum of $100,000.

The contract on the part of the syndicate was made by Woods, Mellier & Co. Will S. Woods was a member of that firm.

Moore agreed to allow Woods, Mellier & Co., two and one half per cent on the amount of the sale in the event of its consummation. Will S. Woods organized the syndicate, and by and with the consent of the other members arranged all matters of detail, with respect to its organization, and the purchase of the lot.

Twenty-five thousand dollars of the purchase money was paid in cash and by agreement between Moore and Will S. Woods who was acting in behalf of the syndicate, the deed was made to R. L. Oliphant, an employee in the office of Woods, Mellier & Co., he at the time executing to Moore three notes for $25,000

each, due respectively in one, two and three years, se-
cured by deed of trust on the ground.   The first note
was paid by the syndicate when it became due, the,
other two notes were sold to Lucy A. Porter, plaintiff's
testatrix, Moore indorsing them.   She died after the
commencement of this suit, and it was revived in the
names of her executors.   While in making the sale the
firm of Woods, Mellier & Co. were acting as the agents
of Moore and Woods & Mellier, they were at the same
time acting as the agents and representatives of the syn-
dicate in making the purchase.   This however was with
the knowledge of all the members of the syndicate.

Oliphant agreed with Will S. Woods to accept the
deed from Moore and to make the notes—upon the
assurance of Woods and Mellier that the parties forming
the syndicate would meet the payments as they became
due, would not hold him responsible in any way, and
that there would be a declaration of trust which each
member would receive, and would be their title for the
property.   He made up and signed the declarations of
trust for each member of the syndicate in May, 1887,
and gave them to the firm of Woods and Mellier at the
same time he signed the notes.   The material parts of
the declaration of trust are as follows:   "Know all
men by these presents, that whereas, L. R. Moore and
wife, of the county of Jackson and State of Missouri,
did, by their certain warranty deed, dated May 16,
1887, convey to Robert N. Oliphant, of said Jackson
county, for the consideration hereinafter stated, the
following described real estate, situated in the county
of Jackson, and State of Missouri, to wit.   *   *   *   .
All of which property was sold and conveyed to said
Robert N. Oliphant at and for the purchase price of
one hundred thousand ($100,000) dollars, of which
purchase price the sum of twenty-five thousand ($25,-
000) dollars was paid cash in hand to the said Moore,

at the time of delivery of the deed conveying the said property as aforesaid, and the balance of said purchase price was evidenced and secured by three certain promisssory notes executed and delivered by said Oliphant to the said L. R. Moore, each for the sum of twenty-five thousand ($25,000) dollars, and becoming due and payable to the said L. R. Moore or his order, one in one year after date, one in two years after date, and one in three years after date, all said notes bearing interest from date, at the rate of eight (8) per cent per annum, according to the tenor and effect of certain interest coupons attached to said notes, and the payment of all said notes and coupons being secured by deed of trust upon all said above described property; And, whereas, ——— of the county of ———, State of ———, did contribute and pay one fifth, that is, five thousand ($5,000) dollars, of the said cash payment of twenty-five thousand ($25,000) dollars, toward the purchase of said land, and has agreed, and does hereby agree, to further contribute and pay, when due, one fifth of all the above mentioned indebtedness and incumbrances on said property, all of which is hereby acknowledged, by the acceptance of this instrument. "And, whereas, for the convenience, and by common consent of the parties interested, the title to all said property was taken by and in the name of said Robert N. Oliphant, for the purpose of holding the same in trust, and re-selling and conveying the same. Now, therefore, this instrument is to declare and make known, that in consideration of the premises, and of the sum of one dollar to the said Robert N. Oliphant, in hand paid by the said ——— the receipt of which is hereby acknowledged, the said Robert N. Oliphant, holds the title to one undivided one fifth interest in all said above described property, in trust for the benefit of the said ——— his heirs or assigns, and for the pur-

poses aforesaid, that is to say, the title to all said property shall remain in the name of the said Robert N. Oliphant until the sale thereof by the owners, and the said Robert N. Oliphant shall have full power, and in his own name, to convey the said property, or any part thereof, or interest therein, and he hereby agrees then to convey the same, and of the proceeds thereof, after payment of the said indebtedness and incumbrances, and all commissions and expenses connected with selling and conveying the same, the said ——— his heirs or assigns shall be entitled to one fifth interest therein. And it is understood and agreed, that the first money, the net proceeds realized from sales of any of said property, shall be applied to the liquidation of said indebtedness and incumbrances thereon, until the whole be fully paid. And it is further understood and agreed, that the said ———, heirs or assigns, shall and will to the extent of his one fifth interest, save and protect the said Robert N. Oliphant, his heirs or assigns, harmless and free from all damage or liability for or on account of the said indebtedness and incumbrances on said property, and for or on account of any convenants in deeds conveying the said property, or any part thereof or interest therein. "In witness whereof, the said Robert N. Oliphant has hereunto set his hand and seal, at Kansas City, Mo., on this ——— day of May, A. D. 1887. (SEAL.)"

. Where the blanks appear in the copy of the declaration of trust the name of the defendant was inserted in the original which was signed and properly acknowledged by Oliphant. Defendant received one of the declarations of trust through the mail about October, 1890, but did not read it or know its contents until about the time of the commencement of this suit, which was December 22, 1892. Who sent it was not shown.

In July, 1887, Oliphant went to New Jersey, where he resided at the time of the trial. After that time he had no further business or communication with Will S. Woods or his firm or with the defendant.

After the purchase and the delivery of the declarations of trust to Wood, Mellier & Company, they continued for several years to act as agents for the syndicate in collecting and accounting to them for the rents.

In October, 1890, the property was advertised for sale by the trustee to pay the last two notes of $25,000 each with interest, and on the day of sale, the defendant and J. W. Merrill on the one part, and their associate owners, entered into a contract whereby they bought of the syndicate the north half of the tract in question for $32,500, all to be paid in cash on the consummation of the agreement. Of this amount $10,000 was paid, on the execution of the agreement, to the other members of the syndicate. This sum was turned over by them to the holder of the notes and duly credited on them. The remainder of the $32,500 was agreed to be paid on a clear title being made to defendant and Merrill within thirty or sixty days; and the holder of the notes agreed with the members of the syndicate on her part to release from this incumbrance the north half of the tract upon receipt of $32,500 on the notes. This contract was never carried out.

The declaration of trust was never returned to Oliphant by defendant, nor did Mrs. Porter or Moore know anything of its existence at the time of the assignment of the notes to her by Moore. The owners of the property having failed to pay the last two notes amounting to $50,000 and interest, Mrs. Porter instituted this suit against defendant for one fifth of the debt.

The court over the objection and exception of plaintiff of its own motion declared the law as follows:

"1.  If the defendant Woods agreed with Will S. Woods to take an interest in the property and advanced $5,000 as his part of the cash payment of $25,000 to Moore, with the express understanding that he was not to be liable for any part of the deferred payments, and was informed by Will S. Woods that he would have the title made to Oliphant, and that Oliphant would execute the notes and deed of trust for the balance of the purchase money, and that the firm of Woods, Mellier & Co., as agents, should have the property for sale and close the purchase with Moore, this did not authorize Will S. Woods, or Woods, Mellier & Co., to obligate Dr. Woods to Oliphant to pay any part of the balance of the purchase money.

"2.  And even if Will S. Woods, as agent, was authorized to bind Dr. Woods to Oliphant for a part of the deferred payments, yet, if the declarations of trust in question were executed by Oliphant and by him delivered to Will S. Woods, as his agent, to use them as he saw proper, and said Will S. Woods held them and delivered the one to Dr. Woods in 1890, and afterwards by agreement between them, the said declaration of trust was surrendered by Dr. Woods to Will S. Woods, as agent of Oliphant, before the institution of this suit and before Mrs. Porter had knowledge of its existence, plaintiffs can not recover in this action.

"3.  If neither Moore nor Mrs. Porter had any knowledge of the existence of the declaration of trust, Moore, when he executed the deed and took the notes and deed of trust, and Mrs. Porter, when she purchased the notes, and Moore was satisfied to make the deed to Oliphant, and take the notes and deed of trust, relying upon the lot, and what he supposed to be the common law liability of the members of the syndicate as sufficient security, and Mrs. Porter purchased the notes, relying upon the same security, before she had any

knowledge of the existence of the declaration of trust, it was by agreement between Oliphant, by his agent, and Dr. Woods surrendered to said agent, then plaintiff can not recover.

"4. If Will S. Woods was authorized by Dr. Woods to conduct the purchase and arrange all matters as he might see proper, between Oliphant and the syndicate, then he was bound by the acceptance of the declaration of trust delivered to and accepted by Will S. Woods at the time the deed from Moore to Oliphant was executed and delivered; and the assumption in said declaration of trust of the debt evidenced by the note sued on, is binding on him unless subsequently released by Oliphant by the surrender to, and acceptance of the same, by his agent."

At the instance of plaintiff the court gave the following:

"The court finds that there is no evidence that the assumption clause contained in the declaration of trust sued on was inserted by fraud or mistake."

The trial resulted in a judgment for defendant and plaintiffs appealed.

The first question with which we are confronted is with respect to the acceptance by defendant of the declaration of trust, either by himself or by some other person having authority to do so for him. That the evidence showed an implied acceptance of the declaration of trust by defendant is indisputable, and no express acceptance in order to bind him by its provisions to Oliphant, was necessary. He received it in October, 1890, and retained it in his possession from that time until about the time of the commencement of this suit, but he says without reading it, or knowing of the assumption clause in it.

If he did not read it and inform himself of its contents, it was his own fault, and he should be held

as if he had done so. *Glenn v. Statler,* 42 Iowa, 107; *Snider v. Express Co.,* 63 Mo. 376; *Mateer v. Railroad,* 105 Mo. 320; *Och v. Railroad,* 130 Mo. 27. Besides, Will S. Woods was defendant's agent, and the delivery of the declaration of trust to him by Oliphant, was in law a delivery to defendant.

Oliphant testified, and it was not controverted, that at the same time the notes were executed by him to Moore, the declarations of trust were also executed by him, and that they were all delivered to Woods and Mellier.

There was no evidence whatever tending to show that Will S. Woods was at any time the agent of Oliphant with respect to the delivery of the declaration of trust. Oliphant was a mere figure-head, having no interest whatever in the property, and merely permitted the title to be placed in him, and executed his notes, and the deed of trust on the property to secure their payment for the accommodation of the syndicate. He had no use for an agent, and in fact had none, so far as the evidence showed. Nor was there any evidence tending to show that Will S. Woods as the agent of Oliphant or otherwise, at any time after the declaration of trust was received by defendant, entered into an agreement with him by which it was surrendered to said Will S. Woods. But even if there was, it is clear that Will S. Woods had no such authority from Oliphant.

The declaration of trust having been accepted by defendant by implication at least, "is evidence of the most satisfactory kind that he has promised to do what the deed says he is to do." *Belmont v. Coman,* 22 N. Y. 438.

It was said in *Sinclair v. Jackson,* 8 Cowen, 585: "A man who admits a fact or deed in general terms, either by reciting it in an instrument executed by him or by

acting under it, shall not be received to deny its exist-ence.''

It is unreasonable to suppose that Oliphant would have taken a deed to the land in which he had not one dollar's interest, assume the burden of an indebtedness of $75,000 merely for the accommodation of the syndi-cate, without the execution of some instrument of writing upon their part binding them to protect him against the payment of the indebtedness, or loss by him in consequence thereof; and it is hardly possible, that the syndicate would have intrusted in him the title of so valuable a piece of property upon which they had paid $25,000 in cash, without the execution by him of some instrument of writing, showing that he held the property in trust for them, and for their use and benefit.

Will S. Woods was the agent of the syndicate in the purchase of the property, and in arranging all details with respect thereto. They knew from whom it was to be purchased, the price to be paid for it, the amount of cash payment required, and that said agent was to get a straw man to whom the deed was to be made, and who would execute his notes for the de-ferred payments, secured by a deed of trust upon the property. It is true that defendant testified that his agreement with Will S. Woods was that he was only to pay his part of the cash payment, and that he was unauthorized to enter into any arrangement with Oli-phant to protect him against the payment of any part of the purchase money. But Will S. Woods' agency with regard to all such matters was general, and when he agreed with Oliphant for the syndicate on the terms of the declaration of trust he was acting within the general scope of his authority as agent, and Oliphant was not bound by any private arrangement between

defendant and Will S. Woods of which he had no knowledge.

In *Samuel v. Bartee*, 53 Mo. App. 587, it was said: "And so it has been said if a person having a horse to sell, intrusts a servant with power to sell him, but directs the servant not to warrant him, and. the servant, nevertheless, upon the sale, does warrant him, the master would be bound by the warranty because the servant was acting within the general scope of his authority, and the public can not be supposed to be cognizant of any private conversation between the master and servant." Story on Agency, secs. 58, 59, and 132; Mechem on Agency, secs. 280, 284 and 350.

In *Baker v. Railroad*, 91 Mo. 152, the court says: "When the principal puts the agent forward as a general agent, or places him in a position where others are justified in the belief that his powers are general, the restrictions which may be imposed privately on the agent will be immaterial, except as between him and the principal, and can have no effect on the rights or remedies of third persons who have no, knowledge of the restrictions or limitations upon his apparent authority * * *. It follows, that if the defendant had imposed any limitations upon this apparent authority of its general freight agent, such limitations could not affect plaintiff unless brought to his knowledge."

So in *Webster v. Wray*, 17 Neb. 579, it is said: "While the rule is that an agent must act within the scope of his authority, yet when the agent's acts affect innocent third parties the principal will be bound to the extent of the apparent authority conferred by him on his agent. * * * A principal is bound equally by the authority which he actually gives, and by that which by his own act he appears to give."

And in *Griggs v. Seldin*, 58 Vt. 561, it is said that

"if one holds another out to the world and accredits him as his agent, he is bound by that person's acts done within the scope of the agency thus given to him. In such cases the question is, not what authority was intended to be given to the agent, but what authority was the third person dealing with him justified from the acts of the principal in *believing* was given to him."

But even if Will S. Woods had in fact exceeded his authority in agreeing with Oliphant, for the execution to the syndicate the declaration of trust, when defendant accepted it, and the syndicate took possession of the property, received for years the rents and profits arising therefrom, paid part of the purchase money after it became due, and recognized by the contract of October 29, 1890, the ownership of the property according to the terms of the declaration, they ratified the entire arrangement between Will S. Woods and Oliphant. They could not ratify that part of the contract which was to their advantage, and accept its benefits, and at the same time reject that part which was burdensome.

No principle of law is better settled than that when a principal accepts the contract of his agent "he must accept it as a whole, and can not accept that which suits him and reject the balance." *Banks v. Everest*, 35 Kan. 687; *Clydesdale Horse Co. v. Bennett*, 52 Mo. App. 333.

A declaration of trust without more is not a contract. It is the act by which an individual acknowledges that property, the title to which he holds in his own name, in fact belongs to another, for whose use he holds it. Bouv. Law Dic. 418; *Cook v. Barr*, 44 N. Y. 160. It is for the benefit of the person in whose favor it is declared, who has the right to accept it or not as he may think proper; certainly he is under no legal obligations to do so. The acceptance may be expressed or

implied.  In this case the acceptance was by implication, but this was as to the instrument as a whole, and not with respect to that part which was beneficial to defendant, and the exclusion of that part which imposed upon him the obligation to pay one fifth of the balance of the purchase money for the property as it should become due.  He could not accept that part which was to his advantage and disclaim that which imposed upon him a burden...

The declaration of trust contained the following provision:  "And whereas, William S. Woods of the county of Jackson, State of Missouri, did contribute and pay one fifth, that is, five thousand dollars, of the said cash payment of twenty-five thousand dollars, towards the purchase of said land, and has agreed, and does hereby agree, to further contribute and pay, when due, one fifth of all the above mentioned indebtedness and incumbrances on said property, all of which is hereby acknowledged, by the acceptance of this instrument."

When defendant accepted the declaration of trust he did so according to its terms and conditions, and in so doing he assumed and obligated himself to pay one fifth of the balance of the purchase money as it become due, and the promise being an express promise not depending upon any conditions to pay at a given time, Oliphant could have maintained an action upon it at any time after the money became due.  But it does not necessarily follow that Moore or the holder of the notes can do so.

In order that the holder may maintain the action it must appear that the promise by defendant to pay one fifth of the balance of the purchase money was made for the benefit of the person entitled thereto. Neither Moore nor Mrs. Porter knew anything of the existence of the declaration of trust before the assign-

ment of the notes to her, but this makes no difference if the contract was made for the benefit of the person entitled to the purchase money.

In *Lawrence v. Fox*, 20 N. Y. 268, it was said: "An action lies on a promise made by the defendant upon valid consideration to a third person     *     *     * although plaintiff was not privy to the consideration. Such promise is to be deemed made to the plaintiff, if adopted by him, though he was not a party nor cognizant of it when made."

In *Howsmon v. Trenton Water Co.*, 119 Mo. 304, there is quoted with approval from *Simson v. Brown*, 68 N. Y. 355, the following:   "It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration.   The contract must be made for his benefit, as its object, and he must be the party intended to be benefited."

"The rule, however, is not so far extended as to give to a third person who is only indirectly and incidentally benefited by the contract a right to sue upon it." *Burton v. Larkin*, 36 Kan. 246.   The name of the person to be benefited need not be given, if, in any manner sufficiently described or designated, he may sue upon the contract. *Rogers v. Gosnell*, 58 Mo. 590; *State v. Laclede Gas Light Co.*, 102 Mo. 482; *Ellis v. Harrison*, 104 Mo. 276; *City of St. Louis v. Von Phul*, 133 Mo. 561.

Defendant not only knew from other sources that the property was purchased from Moore for the syndicate, the amount to be paid therefor, the amount of the cash payment, and how and when the deferred payments were to be paid, but all of these facts substantially appear from the recitals in the declaration of trust, and sufficiently show that he was really the

only person intended to be or that could in fact be benefited by the clause therein contained by which defendant agreed and bound himself to contribute and pay when due one fifth of the unpaid money for said property, and bring Moore, or the assignee of the notes, within the rule which permits a person for whose benefit an express promise is made in a valid contract, between others to maintain an action upon it in his own name. *Interstate Tel. Co. v. B. & O. Tel. Co.*, 51 Fed. Rep. 49.

The promise by defendant being an unconditional promise to pay when due one fifth of the indebtedness, plaintiff's cause of action accrued at that time and in no way depended upon the ability of Oliphant, to make a deed to the property clear of all incumbrances.

The court committed error in declaring the law as set forth in the declarations of law given of its own motion.

The judgment is reversed and the cause remanded for further trial in accordance with this opinion. GANTT, P. J., and SHERWOOD, J., concur.