H. H. STEPHENS, Plaintiff-Appellant,

v.

GREAT SOUTHERN SAVINGS & LOAN ASSOCIATION, a corporation, Defendant-Respondent.

No. 8607.

Springfield Court of Appeals.

Missouri.

Nov. 7; 1967.

John B. Newberry, Springfield, for plaintiff-appellant.

Miller, Fairman, Sanford, Carr & Lowther, Gerald H. Lowther, James K. Prewitt, Henry W. Westbrooke, Jr., Springfield, for defendant-respondent.

STONE, Presiding Judge.

In this jury-tried action at law, plaintiff H. H. Stephens sought judgment on the theory that he was a third-party beneficiary of an unconsummated loan agreement between defendant Great Southern Savings & Loan Association, the promisor, and McGilco, Inc., the promisee; and, from the adverse judgment entered upon the unanimous jury verdict for defendant, plaintiff has perfected this appeal.

In Count II of his amended petition upon which the case was tried, plaintiff averred that defendant entered into "an oral agreement with McGilco . . . to secure the payment to plaintiff of the amount of *$12,564.72* agreed to be paid to plaintiff by McGilco" for paving portions of certain streets in Park Crest Village Second Addition, a subdivision southwest of Springfield in Greene County, Missouri. (All emphasis herein is ours.) In the course of trial, the sum sought by plaintiff was reduced to *$11,200,* the amount Great Southern allegedly agreed to loan McGilco, although plaintiff testified that the total cost of the paving project was *$12,566.70,* including "an additional $600 extra on excavation that was to have been done by McLaggan," McGilco's president. In any event, the amount in dispute is within our monetary jurisdiction. V.A.M.S. § 477.040.

The points here relied on are that the trial court erred (1) in refusing (so it is asserted) in one instance to allow plaintiff's counsel to cross-examine Russell Cather, Great Southern's president, who was called as a witness for plaintiff, and (2) in giving defendant's instruction 3. Defendant, who stood on its motion for a directed verdict at the close of plaintiff's case and offered no evidence, denies that the trial court erred in either particular relied on by

plaintiff but insists initially that plaintiff did not present a submissible case. That should be our first inquiry because alleged trial errors usually become immaterial where plaintiff fails to make a submissible case. Osborn v. McBride, Mo., 400 S.W.2d 185, 188(1); Branstetter v. Gerdeman, 364 Mo. 1230, 1240, 274 S.W.2d 240, 247(9); Hoock v. S. S. Kresge Co., Mo. (banc), 230 S.W.2d 758, 761.

There was no testimony by McLaggan; and plaintiff's case consisted of his own testimony, that of president Cather, and certain portions of the deposition of Clyde E. Burton, Great Southern's secretary. This evidence, together with the documentary exhibits offered by defendant and received in evidence without objection at the outset of the trial, disclosed the following state of facts. McLaggan talked with Cather and Burton in July 1964, "offered eight lots [in Park Crest Village Second Addition] as collateral," and "arranged for a loan [of $11,200] for the specific purpose of paving." A note in the principal sum of $11,200 dated July 16, 1964 (hereinafter referred to as the $11,200 Great Southern note), and a deed of trust of even date securing payment of that note and covering the eight lots "offered" by McLaggan, were executed on behalf of McGilco and were delivered to Great Southern. At the same time, McGilco as "Contractor" and "Owner," Great Southern as "Mortgagee," and Standard Title Insurance Company acting by its agent, Escrow Facilities, Inc., as "Escrowee," executed and entered into an escrow agreement. By this agreement, *McGilco* covenanted, inter alia, "to construct . . . the complete improvements contemplated . . . for the sum of $10,506.25 and to pay all claims for materials and labor used therein." *Great Southern* covenanted, inter alia, "to lend to Owner [McGilco] $11,200 and accept therefor a note or notes secured by a deed of trust or mortgage on the above described property and other security that Mortgagee may require, and to pay as requested by Escrowee,

the full proceeds thereof to the Escrowee for the account of the Owner . . . ." *Standard Title* covenanted, inter alia, "to make an examination of the title of said property and report the condition thereof to Mortgagee, showing defects and liens against said property to be eliminated or removed by the Owner . . . ."

The title examination disclosed two prior unreleased deeds of trust, to wit, (a) one filed for record on May 17, 1963, which secured payment of a note in the principal sum of $29,100 executed by McGilco et al., and which covered, together with other realty, four of the eight lots described in the deed of trust securing payment of the $11,200 Great Southern note, and (b) the other filed for record on April 2, 1964, which secured payment of a note in the principal sum of $50,000 executed by McGilco and which covered twenty-eight lots including the other four of the eight lots described in the deed of trust securing payment of the $11,200 Great Southern note. The uncontradicted evidence adduced as a part of plaintiff's case was that neither of the aforesaid prior liens on the eight lots was "eliminated or removed by the Owner [McGilco]"; that consequently the Escrowee (Standard Title) never requested the Mortgagee (Great Southern) to disburse, and the Mortgagee never disbursed, any sum on the $11,200 Great Southern note; and that accordingly the contemplated $11,200 loan by Great Southern to McGilco was never consummated.

When McGilco sought the $11,200 loan "to cover paving" in Park Crest Village Second Addition, president Cather did not *then* know "who was going to do the job." Whether secretary Burton had such knowledge *at that time* is not clear, since no date was designated in the only inquiry as to whether he "knew Mr. Stephens was doing the paving out there"; but, in our view of the case, Burton's knowledge of this fact (if so) when the $11,200 Great Southern note, the deed of trust securing payment of that note, and the escrow agreement

were executed, would neither require nor permit a conclusion different from that hereinafter announced.

Before beginning the paving job, plaintiff had an agreement (whether oral or written we are not informed) "with McGilco, Incorporated" or "with John McLaggan under the name of McGilco." But he admittedly had no prior contact with Great Southern and, before entering upon the paving job, neither inquired nor knew from what source McGilco or McLaggan proposed to obtain funds with which to pay him. When, after completion of the paving, plaintiff first talked with a representative of Great Southern, namely, secretary Burton, he (plaintiff) was told that "Mr. McLaggan had not made arrangements for payment." To the inquiry, "did he [Burton] tell you whether or not Great Southern would pay for the paving," plaintiff frankly responded, "that wasn't brought up, because I had no bill against Great Southern."

■ ■ It has long been settled in this jurisdiction that "when one person, for a valuable consideration, engages with another by simple contract to do some act for the benefit of a third, the latter, who would enjoy the benefit, may maintain an action for the breach of such engagement."[1] But this general rule is subject to various qualifications and limitations. 17A C.J.S. Contracts § 519(4)a, p. 961. So " '[i]t is not every promise . . . made by one to another from the performance of which a benefit may ensue to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited."[2] And the intent necessary to establish the status of a third-party beneficiary is "not so much a desire or purpose to confer a benefit on the third person, or to advance his interests or promote his welfare, but rather an intent that the promisor assume a direct obligation to him." 17A C.J. S. Contracts § 519(4)c, l.c. 975.

■ Beneficiaries of contracts to which they are not parties have been divided into three classes, namely, donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. Generally speaking, those in the first two classes have enforceable rights against the promisor, but those in the third class do not.[3] One distinguished writer defines an incidental beneficiary as "a person who is neither the promisee of a contract nor the party to whom performance is to be rendered [but who] will derive a benefit from its performance." 2 Williston on Contracts (3rd Ed.), § 402, p. 1088. To the same effect, see the definition in 17 Am.Jur.2d Contracts § 307, l.c. 733, note 19. Other eminent authorities have regarded the term "incidental beneficiaries" as "a sort of omnium gatherum . . . not very clearly descriptive" [4 Corbin on Contracts, § 779C, l.c. 41] and have defined it in negative fashion, i. e., all those who are not donee beneficiaries and creditor beneficiaries within the meaning of those terms. 4 Corbin on Contracts, § 779C, l.c. 41; 1 Restatement, Contracts, § 133, subsec. (1) (c), l.c. 152. Our courts apparently

1. Bank of Missouri v. Benoist, 10 Mo. 519, 524; Crone v. Stinde, 156 Mo. 262, 266, 55 S.W. 863, 56 S.W. 907. See Crow v. Kaupp, Mo., 50 S.W.2d 995, 997 (2); Handlan-Buck Co. v. State Highway Com'n of Missouri, Mo., 315 S.W. 2d 219, 222(3); McCoy v. St. Joseph Belt Ry. Co., 229 Mo.App. 506, 514, 77 S.W.2d 175, 180(2).

2. Howsmon v. Trenton Water Co., 119 Mo. 304, 308, 24 S.W. 784, 785, 23 L.R. A. 146; Porter v. Woods, 138 Mo. 539, 554, 39 S.W. 794, 798; Gate City Nat. Bank v. Chick, 170 Mo.App. 343, 350, 156 S.W. 743, 745–746; Uhrich v. Globe Surety Co. of Kansas City, 191 Mo.App. 111, 115, 166 S.W. 845, 846. See Farris v. Pitts, 221 Mo.App. 1204, 1206, 300 S.W. 840, 841.

3. 1 Restatement, Contracts, § 133, p. 151; Id., § 147, p. 176; 4 Corbin on Contracts, § 774, p. 6; Id., § 779C, p. 40; 17A C.J.S. Contracts § 519(4)b, p. 964.

have not formulated or adopted a *precise* definition of the term "incidental beneficiaries," and we need not do so here. For the purposes of our discussion, suffice it to say that it is uniformly recognized that the general rule permitting recovery by a third-party beneficiary is not so far extended as to give a third person, who would be only incidentally, indirectly or collaterally benefited by a contract, the right to recover upon it.[4]

■ Hypothetical illustrations in the treatises and holdings in cases arising out of more or less analogous factual situations are helpful and persuasive in resolving the determinative issue in the instant case as to whether or not plaintiff was an incidental beneficiary of the loan agreement between promisor Great Southern and promisee McGilco. Relevant and representative illustrations are: "9. B promises A for sufficient consideration to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If, on a fair interpretation of B's promise, the amount of the debts is to be paid by B to C, D and E, they are creditor beneficiaries; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries." 1 Restatement, Contracts, § 133, 1.c. 155, Illustration 9. See Seargeant v. Commerce

Loan and Inv. Co., 77 Ariz. 299, 270 P.2d 1086, 1090. "Where A owes money to a creditor C, or to several creditors, and B promises A to supply him with the money necessary to pay such debts, no creditor can maintain suit against B on this promise." 4 Corbin on Contracts, § 779D, p. 43. See also the illustration in 17 Am.Jur.2d Contracts § 307, 1.c. 733, note 19. With these illustrations before us, examination of numerous cases, some of which are listed marginally,[5] leaves us in no doubt but that instant plaintiff was an incidental beneficiary of the loan agreement between Great Southern and McGilco. Of course, consummation of that agreement *might* have redounded incidentally to plaintiff's benefit. However, the same reasonably could be said of any executory contract whereby a debtor expects to receive money with which to pay his creditors,[6] and the fact that plaintiff might have benefited from a loan to McGilco conferred upon him no right of action against defendant Great Southern.

■■ For yet another reason plaintiff could not recover on the undisputed facts of the case at bar. The principal sum of the $11,200 Great Southern note was to be disbursed in accordance with the terms and provisions of the escrow agreement executed by McGilco, Great Southern, and Standard Title acting by its agent, Escrow Facilities, Inc., to wit, "as requested by Es-

4. Howsmon v. Trenton Water Co., supra, 119 Mo. at 308, 24 S.W. at 785; State v. St. Louis & S. F. Ry. Co., 125 Mo. 596, 617, 28 S.W. 1074, 1078; Porter v. Woods, supra, 138 Mo. at 554, 39 S.W. at 798; Gate City Nat. Bank v. Chick, supra, 170 Mo.App. at 351, 156 S.W. at 746; Uhrich v. Globe Surety Co. of Kansas City, supra, 191 Mo.App. at 115, 166 S.W. at 846; Kansas City Life Ins. Co. v. Rainey, 353 Mo. 477, 485, 182 S.W.2d 624, 628(6), 155 A.L.R. 168; Black & White Cabs of St. Louis, Inc. v. Smith, Mo.App., 370 S.W.2d 669, 674 (2); 17 Am.Jur.2d Contracts § 307, p. 732.

5. Seargeant v. Commerce Loan & Inv. Co., 77 Ariz. 299, 270 P.2d 1086(3, 4); Apex Siding & Roofing Co. v. First Federal Savings & Loan Ass'n, of Shawnee,

Okl., 301 P.2d 352, 354–355(1, 2); Hawkins v. Mattes, 171 Okl. 186, 41 P.2d 880, 889–894(10, 11); Grand Prairie Gravel Co. v. Trinity Portland Cement Co., 5 Cir., 295 F. 140; Public Water Supply Dist. No. 6 of Jackson County, Mo. v. United States, D.C.Mo., 66 F. Supp. 66, 71(6); Utah-Idaho Live Stock Loan Co. v. Blackfoot City Bank, D.C. Idaho, 290 F. 588(2); Burton v. Larkin, 36 Kan. 246, 13 P. 398, 399(2), 400(5); Tomaso, Feitner & Lane, Inc. v. Brown, 4 N.Y.2d 391, 175 N.Y.S.2d 73, 151 N.E. 2d 221; Avery v. Sielcken-Schwarz, 5 N.J.Super. 195, 68 A.2d 635, 637(1, 2).

6. Carpenter v. Reliance Realty Co., 103 Mo.App. 480, 502, 77 S.W. 1004, 1011; Washburn v. Interstate Investment Co., 26 Or. 436, 36 P. 533, 38 P. 620, 621; Burton v. Larkin, supra, 13 P. at 400.

crowee [Standard Title]," and no such request was made. This, for the obvious and compelling reason that title examination of the eight lots "offered" by McGilco's president as "collateral" for the loan disclosed two prior unreleased deeds of trust constituting liens thereon, neither of which was "eliminated or removed by the Owner [McGilco]" and one of which was foreclosed prior to trial, thus rendering McGilco's performance of the loan agreement impossible. To recognize plaintiff's claimed right of recovery in these circumstances would compel payment by Great Southern in contravention of its agreement with McGilco, *not in accordance therewith.* The law should not and does not impose such liability. Second Nat. Bank of St. Louis v. Grand Lodge of Free & Accepted Masons, 98 U.S. 123, 25 L.Ed. 75; Utah-Idaho Live Stock Loan Co. v. Blackfoot City Bank, D.C.Idaho, 290 F. 588, 591–592. One suing on a contract allegedly made for his benefit as a third-party beneficiary must accept the contract as it was made by the parties thereto; and he is in no better position than, and his rights are no greater than those of, the contracting party through whom he claims, in this instance promisee McGilco.[7]

On the undisputed facts, plaintiff was not entitled to recover and defendant Great Southern's motion for a directed verdict should have been sustained. Accordingly, the judgment for defendant is affirmed.

HOGAN and TITUS, JJ., concur.

---

7. Allen v. Globe-Democrat Publishing Co., Mo., 368 S.W.2d 460, 463; Nick v. Travelers Ins. Co., 233 Mo.App. 1181, 1200, 185 S.W.2d 326, 336(4), affirmed 354 Mo. 376, 189 S.W.2d 532; Noles v. Terminal R.R. Ass'n of St. Louis, Mo.App., 154 S.W.2d 606, 609(2); Kingsland v. Missouri State Life Ins. Co., 228 Mo. App. 198, 202, 66 S.W.2d 959, 961(6); In re Connecticut Co., 2 Cir., 95 F.2d 311, 315(5); Utah-Idaho Live Stock Loan Co. v. Blackfoot City Bank, supra, 290 F. at 591–592; 17A C.J.S. Contracts § 519(4), subsec. h(b), p. 989.