LACLEDE INVESTMENT CORPORATION, Plaintiff-Appellant,

v.

Jerry KAISER and David Moulton, Defendants-Respondents.

No. 36239.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 7, 1976.

M. E. Stokes, Paul B. Hunker, Jr., St. Louis, for plaintiff-appellant.

Hearnes, Padberg, McSweeney & Slater, Edward P. McSweeney, St. Louis, for defendants-respondents.

KELLY, Judge.

This is an appeal from an order of the Circuit Court of St. Louis County sustaining the defendants' Motion for New Trial following a verdict by a jury for the plaintiff for $425,000.00 in a breach of contract suit tried on the third party beneficiary theory for losses allegedly sustained by the plaintiff by reason of the failure of the defendants to complete or to furnish additional monies to complete the construction of an apartment project in north St. Louis County. We affirm the action of the trial court in granting defendants a new trial.

Plaintiff sued as a third party beneficiary of an agreement between the defendants and the Laclede Development Company, a related sister corporation of plaintiff, constituting the Articles of Limited Partnership. Plaintiff's cause of action is based upon the provisions of Article 9.2 of said Articles of Limited Partnership wherein it is provided that the defendants, as the "General Partners" "agree to complete the development contemplated by these Articles under the terms of the Construction and Disbursing Escrow Agreement between K & M Investment Co., Guaranty Land Title Company, Kaiser-Moulton, Inc., and Roosevelt Federal Savings and Loan Association" and the further provision in this same paragraph of the Articles of Limited Partnership that "If any monies are required to complete the project over and above the principal amount stated in the loan agreement between Laclede Investment Corporation and K & M Investment Co., attached as Exhibit '2', such monies will be furnished by the General Partners in the form of additional capital contributions."

Defendants, on the other hand, rely on the provisions of Article 15.1 of the Articles of Limited Partnership providing "The General Partners shall not be liable to the Limited Partner for any mistake of law or fact, or of both law and fact, or for errors of judgment or for any loss of the Limited Partnership unless occasioned by actual fraud or gross neglect on the part of the General Partner or Partners."

The decisive issue in this case as it was tried in the trial court is whether the defendants can be held to be personally liable to the plaintiff as the third party beneficiary of the Articles of Limited Partnership for their admitted failure to complete the County Fair apartment project or, in the alternative, to furnish the monies to complete the project over and above that loaned to the Limited Partnership by the plaintiff.

The order of the trial court granting the defendants a new trial was based upon grounds "2, 3 and 4" of defendants' Motion for New Trial. These grounds, as they

appear in defendants' Motion for New Trial are as follows:

"2. That Instruction No. 3, given by the Court, was erroneous for the following reasons: That said Instruction constituted an unacceptable variation from M.A.I. 26.02; that the third element of said Instruction was misleading and confusing because the words 'at the time defendants made either agreement' led the jury to believe that there was more than one contract in issue when plaintiff during the trial of the cause had based its claim for relief upon only one contract.

"3. That the Court erred in giving Instruction No. 5 in the form offered by plaintiff, said Instruction constituting an unacceptable variation from M.A.I. 4.01.

"4. That the Court erred in not sustaining defendants' objections to certain remarks of plaintiff's counsel and in not declaring a mistrial because of such remarks, which remarks were as follows: 'If you give us our judgment, I don't think we will ever collect it, but that is not important, but if you buy their position in this law suit you are going to make everybody in the community aware of the fact that people can do what these people did . . . ;' that said remarks were prejudicial to defendants in that they led the jury to believe that defendants were not interested in the outcome of the case and that defendants would suffer no actual loss as a result of the verdict; that said remarks were not supported by the evidence."

■ Plaintiff contends in this court that grounds "3" upon which the trial court based its order granting the defendants a new trial was so lacking in specificity that it presented nothing to the trial court for review and therefore the trial court erred in basing its order on that grounds. We agree. Rule 79.03 (presently Rule 78.07). We have searched the record and there is no evidence therein that at the time this Instruction was offered there were any specific objections made to the Instruction. However, even though defendants' counsel was not required to make specific objections

to the Instructions at that time by Rule 70.02, having chosen to follow that path he was required by Rules 70.02, 79.01 and 79.03 to set forth specific objections making known to the trial court wherein and why the Instruction alleged to be in error was so in his Motion for New Trial. *Bremer v. Mohr*, 478 S.W.2d 14, 19[8] (Mo.App.1972), *Robinson v. St. John's Medical Center, Joplin*, 508 S.W.2d 7, 11[7] (Mo.App.1974). We therefore conclude that this particular trial court error alleged in violation of the Rules cited above did not properly present to the trial court in the defendants' Motion for New Trial grounds for a new trial and should not have been the basis for the trial court's granting of same.

■ Nevertheless, if the action of the trial court can be sustained on any of the other grounds specified in defendants' Motion for New Trial we must affirm the ruling of the trial court. *Kreis v. Missouri Pacific Ry. Co.*, 131 Mo. 533, 33 S.W. 64, 65 (1895), *Davis v. Perkins*, 512 S.W.2d 868, 870 (Mo.App.1974). The general rule is that on appeal from the trial court's grant of a new trial the Court of Appeals must indulge every reasonable inference favorable to the trial court's ruling and may not reverse unless there has been a clear abuse of discretion. *Penn v. Hartman*, 525 S.W.2d 773, 775[1] (Mo.App.1975).

Prior to disposing of the plaintiff's other reasons why the action of the trial court should be held to be error, we next proceed to a point raised in defendants' brief that plaintiff did not make a submissible case. Defendants in their brief filed in this court renew their complaint that the plaintiff failed to make a submissible case presented initially in the trial court at the conclusion of all of the evidence, and again in their post-trial Motion for Judgment in Accordance with their Motion for Directed Verdict or, in the alternative, for a New Trial.

■ Since *Wilhelm v. Haemmerle*, 262 S.W.2d 609, 610–611[2] (Mo.1953), it has been the law of this State that where the trial court has denied a defendant's post-trial motion for judgment in accordance with its motion for a directed verdict but sus-

tained its motion for new trial, and plaintiff appeals from the order granting defendant a new trial, the defendant may contend that the plaintiff failed to make a submissible case where that point had been preserved by timely trial motions and post-trial motions to set aside the verdict and enter judgment for the defendant, or in the alternative, for a new trial. *Kinder v. Pursley*, 488 S.W.2d 937, 939[2] (Mo.App.1972). Our examination of the record reveals that these prerequisites have been met in this case.

This law suit was instituted by a petition wherein there were two plaintiffs, Laclede Development Company and Laclede Investment Company. By the time the case came on for trial the petition originally filed had been amended and the cause came on for trial on a First Amended Petition which alleged, in a single count, that the Laclede Development Company entered into an agreement with the defendants for the formation of a limited partnership to be known as K & M Investment Company; that this agreement is entitled "Articles of Limited Partnership;" that a Construction and Disbursing Escrow Agreement was referred to in this agreement; that under the terms of the agreement between Laclede Development Company and defendants the defendants agreed to furnish as additional capital contributions, all monies in excess of the amount of the loan from plaintiff necessary to complete "County Fair, a construction project, as rapidly as practical and to deposit with the Roosevelt Federal Savings and Loan Association all payments accruing under a Deed of Trust or Mortgage during construction of the project as they became due; that pursuant to the terms of an agreement between the K & M Investment Company and the Laclede Investment Corporation, and in reliance upon the agreement between the defendants and the Laclede Development Company, the plaintiff agreed to loan the limited partnership, K & M Investment Company, the sum of $500,-000.00; that in accordance therewith, plaintiff advanced the sum of $425,000.00 as a loan. Plaintiff further alleged that the defendants *breached their agreement* with Laclede Investment Corporation and Laclede Development Company by refusing to furnish funds necessary to complete the project, by failing and refusing to complete the project and by failing and refusing to deposit with the Roosevelt Savings and Loan Association all payments accruing under the Deed of Trust or Mortgage during construction of the project as and when the same became due; that as a result of the breach of the agreements by the defendants, the Roosevelt Federal Savings and Loan Association foreclosed on and sold the property under the Deed of Trust on November 23, 1971, causing the Laclede Development Company to sustain the loss of its investment of $2500.00, the loss of its equity interest in the completed project in the amount of $300,000.00 and the loss of its profits after completion of the project in the amount of $260,000.00. Further, as a result of the defendants' breach of the agreements, the Laclede Investment Corporation sustained a loss of its security interest in the property in the amount of $425,-000.00, the sum advanced as a loan, together with interest in the amount of $24,606.64. The Laclede Development Company prayed for a judgment against the defendants for $562,500.00 and Laclede Investment Company prayed for a judgment against the defendants for $449,606.94 with interest at the rate of 8% from November 23, 1971. Defendants' Answer was a general denial of the allegations contained in plaintiffs' petition other than that allegation with respect to the residency of the defendants. By way of affirmative defense, defendants alleged that by Article 15.1 of the Limited Partnership Agreement they were not liable to Laclede Development Company and that under the terms of the Loan Agreement between Laclede Investment Corporation and K & M Investment Company they were not liable for any losses sustained thereunder. They further alleged that by the terms of the promissory notes executed by the defendants in favor of the Laclede Investment Corporation no personal liability was to be asserted against the makers of said notes, but rather that the sole remedy

of the holder of said notes was to be by foreclosure of the Deed of Trust and Security Agreement.

Immediately prior to trial Laclede Development Company dismissed its claim against the defendants without prejudice. During the course of the pre-trial conference at which this dismissal was announced, counsel for defendants advised the trial court that during his opening statement to the jury he intended to tell the jury that he expected the evidence would show that the defendants entered into an agreement with the Laclede Development Company and that that agreement provided, in part, that the defendants were not to be liable for any mistake of law or fact or for errors of judgment, or for any loss of the limited partnership unless occasioned by actual fraud or gross neglect on their part. Counsel for the Laclede Investment Corporation, who had been attorney of record for Laclede Development Company also, objected on the ground that it was the position of Laclede Investment Corporation that elimination of personal liability on the part of the individual defendants in no wise limited or reduced their responsibility to fulfill "their contract" or gave them a license to breach "the contract" at will and not perform. A further discussion followed with respect to the provisions of the notes and an objection was made with respect to any statement about those provisions in the notes. Both objections were overruled. At several other stages during the course of the trial when reference was made to these provisions in the Articles of Limited Partnership or the promissory notes plaintiff's counsel objected and was overruled.

The evidence adduced at trial was that Jerry Kaiser and David Moulton, the defendants, were, in 1969, engaged in business together as K & M Investment Co., a general partnership, and said general partnership was the owner of an 11 acre tract of land situated in north St. Louis County on Halls Ferry Road between Chambers and Jennings Station Roads. Defendants were also the officers and sole shareholders in Kaiser-Moulton, Inc. Mr. Kaiser was the president of Kaiser-Moulton, Inc. Kaiser and Moulton decided to develop the tract of land aforesaid into a townhouse and garden apartment project to be known as County Fair, which, when completed, would consist of 16 buildings of 150 apartment units, a recreation center and a swimming pool. K & M Investment Company contracted with Kaiser-Moulton, Inc. to construct the project. To obtain financing for construction of the project, K & M Investment Co., the partnership, obtained a loan of $1,860,-000.00 from the Roosevelt Savings and Loan Association. This loan was secured by a first deed of trust on the tract of land. On January 9, 1969, K & M Investment Company, the owner of the tract of land, Kaiser-Moulton, Inc., the contractor, and Roosevelt Federal Savings and Loan Association, the mortgagee, entered into a Construction and Disbursing Escrow Agreement with Guaranty Land Title Company, as the escrowee. This escrow agreement provided that the contractor would construct the County Fair apartment project for the owner for the sum of $1,860,000.00, and the mortgagee agreed to supply the funds to the escrowee which would in turn distribute them to the contractor as the work on the project progressed.

Construction was commenced and sometime prior to June, 1970, it became apparent to Kaiser and Moulton that additional monies would be necessary if the project was to be completed. Through a Mr. Jim Appell, an appraiser with the Real Estate Research Co., a real estate appraisal firm which had made an appraisal of the project prior to the obtaining of the loan from Roosevelt Federal Savings and Loan Association, Kaiser learned that Laclede Gas Company was investing in real estate. Mr. Appell called Mr. Gardner, the Vice-President and Secretary of Laclede Investment Corporation, who at that time had general supervision and responsibility for diversification for Laclede Gas Company[1] and in-

---

1. Mr. Gardner was also vice-president of Laclede Gas Company and vice-president and secretary of the Laclede Development Company. He was also a member of the Board of Di-

quired if Mr. Kaiser could call on him. Mr. Gardner replied that Mr. Kaiser could call on him. At some unspecified date Mr. Kaiser did call on Mr. Gardner, met with him and Mr. Donald Novatny, a vice-president of Laclede Investment Corporation,[2] and negotiations were undertaken which culminated in plaintiff advancing $425,000.00 to K & M Investment Company, a limited partnership which was formed from the original general partnership, with Laclede Development Company as the limited partner and Messrs. Kaiser and Moulton as the general partners.

Early in the negotiations stage, and while discussions relative to the mechanics of the loan were in progress, Mr. Novatny furnished to Mr. Kaiser a form of Articles of Limited Partnership which Laclede Development Company had entered into with another project developer, to be used as a model for the limited partnership to be entered into with Kaiser and Moulton. Kaiser took this form to an attorney who had also participated in the legal matters associated with the preparation of the other limited partnership mentioned. Whether this attorney was representing Kaiser and Moulton prior to this time is not clear, but he did participate in the preparation of the Articles of Limited Partnership ultimately entered into by defendants, the Laclede Development Company and Laclede Investment Corporation. A number of documents were prepared by this attorney, including the proposed Articles of Limited Partnership, and were forwarded to both Mr. Novatny and the defendants. Someone at Laclede Investment Corporation insisted that included in the Articles of Limited Partnership there be a provision that the General Partners agree to complete the development contemplated by the Articles under the terms of the Construction and Disbursing Escrow Agreement and if any monies were to be required to complete the

project over and above the principal amount stated in the loan agreement between Laclede Investment Corporation and K & M Investment Company, the general partners were to furnish such monies in the form of additional capital contributions. This was done, and on June 12, 1970, the Articles of Limited Partnership were executed by the defendants, as the general partners, and Laclede Development Company, as the limited partner, by Lee M. Liberman. On the same day the Loan Agreement between the limited partnership, K & M Investment Company and Laclede Investment Corporation was executed, Mr. Kaiser signing for the Limited Partnership and Lee M. Liberman, President for the Laclede Investment Corporation.[3]

According to the Articles of Limited Partnership the intent of the Articles was to convert and expand the general partnership into a limited partnership by the admission of Laclede Development Company as a Limited Partner. It recited that the tract of land owned by K & M Investment Co. should continue to be owned by the limited partnership and that the sole purpose for which the limited partnership was formed was "to own, develop and hold for investment" the land owned by it and "to construct, maintain, operate and hold for investment rental improvements thereon." By Article 9.1 the loan agreement between the limited partnership and Laclede Investment Corporation was made a part of the Articles of Limited Partnership. As previously stated, Article 9.2 required that the general partners complete the apartment project or furnish the monies necessary to do so. Each of the general partners' capital cash contributions amounted to $1,250.00 for which each was to receive a 25% share of the profits; the limited partner, Laclede Development Company, contributed $2,500.00 for which it was to receive a 50% share of the profits. Article 15.1 provided

---

rectors of both the investment and development companies.

**2.** Mr. Novatny was also vice-president and comptroller of Laclede Gas Company and vice-president of the Development Company.

**3.** Mr. Liberman was also president of Laclede Gas Company and Laclede Development Company.

that the General Partners were not liable to the Limited Partner for any mistake of law or fact, or of both law and fact, or for errors of judgment or for any loss of the Limited Partnership unless occasioned by actual fraud or gross neglect on the part of the General Partner or Partners.

The loan agreement between the Limited Partnership and plaintiff provided that Laclede Investment Corporation would make loans to the Limited Partnership up to a principal amount of $500,000.00. Each loan was to be evidenced by a promissory note bearing interest at the rate of 8% per annum and was to be secured by a Second Deed of Trust and a Security Agreement upon the property of the Limited Partnership. Each note was to require repayment monthly of ¹⁄₂₄₀th of the principal amount plus all accrued interest. Interest on the notes was delayed however until the "cash flow" of the Limited Partnership was adequate to meet the principal and interest payments on the note or until 12 months from the date of the loan, whichever occurred earlier. Upon this happening, the note was to be "reformed" by incorporating all accrued interest into principal and repayment should commence with the first month following reformation of the note. All subsequent notes were to be handled likewise if so required by the cash flow.

Paragraph 3 of the loan agreement made reference to the Articles of Limited Partnership and provided "The cash flow of the K & M Investment Co., Limited Partnership, as defined in Article 10.2 of the Limited Partnership Agreement, shall be used as therein provided for prepayment of the final installments of the notes provided for herein, in inverse order of maturity of such installments."[4]

It was specifically provided in the loan agreement that the promissory notes referred to should be substantially in the forms attached to the loan agreement "and incorporated herein by this reference." At trial it was stipulated by counsel for Laclede Investment Corporation that the note form referred to in the loan agreement was the form actually used in the several notes executed by the Limited Partnership as plaintiff advanced monies to it. On each of the promissory notes there appeared the following:

> "No personal liability shall be asserted or be enforceable against the maker, it being intended that the sole remedy of the holder hereof be by the foreclosure of the deed of trust and security Agreement by virtue of which the holder of this note may foreclose, possess, receive or recapture any or all of the property described in said instruments as being security for this indebtedness."

A total of eight notes, aggregating $425,000.00 were executed by Messrs. Kaiser and Moulton each time Laclede Investment Corporation advanced funds to the Limited Partnership and on each such promissory note the personal liability waiver set out above appears.

Defendants failed to meet their payments on the loans from Roosevelt Federal Savings & Loan Association and on November 23, 1971, the property was sold at foreclosure for $1,850,000.00 to the highest bidder, Roosevelt Federal Savings & Loan Association, the holder of the first deed of trust. The County Fair project was completed by Guarantee Land Title Company, the escrow agent, after the foreclosure sale at a cost of $167,604.08 for labor and material to finish the project and $177,606.20 in settlement of lien claims filed against the land, a total of $245,210.28. These defendants furnished some funds in satisfaction of the lien claims by the Title Company.

■ Plaintiff has conceded that its cause of action is brought against the defendants

---

4. This reference to the definition of "cash flow" in the Limited Partnership Agreement was occasioned by the provision in the loan agreement that the initial loan would be made prior to receipt of any rental income from the project and that interest would not accrue on the note until the cash flow of the limited partnership was adequate to meet the interest payments or until 12 months from the date of the loan, whichever should come earlier, when the notes would be reformed. Loans subsequent to the initial loan were subject to this same cash flow provision.

as a third party beneficiary of the Articles of Limited Partnership and therefore its right to recover hinges on principles of law peculiar to a third party beneficiary contract cause of action. They have no greater rights under the contract than the promisee who was a party to the agreement, *Noles v. Terminal R.R. Ass'n of St. Louis*, 154 S.W.2d 606, 609[2] (Mo.App.1941), and must accept the contract as it was made by the parties thereto. *Stephens v. Great Southern Savings & Loan Ass'n*, 421 S.W.2d 332, 337[8] (Mo.App.1967), 17A C.J.S. Contracts § 529.

Defendants do not contest that they did not complete the project nor furnish the monies, in addition to those loaned by plaintiff, to complete the project as required by Article 9.2 of the Articles of Limited Partnership; rather, they contend that by Article 15.1 thereof, there is no personal liability on their part.

■ Article 15.1 of the Articles of Limited Partnership was never intended to limit the liability of the general partners except from good faith losses occasioned from management decisions which were the result of neither gross neglect nor fraud, the plaintiff argues. It was not, it contends, intended to shield the general partners' personal liability for their failure to comply with the provisions of Article 9.2. The phraseology of Article 15.1 does not specifically state that it is limited to the management decisions, as plaintiff contends, nor that it contemplates the failure of the defendants to comply with the requirements of Article 9.2, as defendants contend. While it might be that one lending funds to a developer for the purposes of construction of a project of this nature could agree to look only to the right of foreclosure against the land secured by a deed of trust and forfeit whatever other legal remedies would be available to him upon the failure of the borrower to repay the loan, it would, to say the least, be most unusual. This completely ignores the plain intention of the parties, plaintiff argues, and the "plain terms of the documents do not permit an interpretation contended for by defendants." We con-

clude that what the intention of the parties to the contract was in this respect is a jury issue and the plaintiff made a submissible case for the jury on its theory of the case. We therefore deny defendants' prayer that we enter judgment for them in this court.

■ We now move to plaintiff's contentions that the trial court erred in granting defendants a new trial on grounds 2 and 4 of defendants' Motion for New Trial. We shall first consider the latter grounds, viz. the prejudicial reference to collectibility of any judgment the jury might return in behalf of the plaintiff. That portion of the plaintiff's counsel's argument the trial court deemed prejudicial and warranted the granting of a new trial was:

"And if you buy this—well, we probably will never see it, but if you give us our judgment—I don't think we will ever collect it—but that is not important."

Plaintiff argues in its brief that this trial argument was proper because the matters referred to were properly in evidence, were not prejudicial to the defendants and were retaliatory to defendants' counsel's argument. We do not agree. It was plaintiff's counsel who inserted into the record during plaintiff's case and his examination in chief of Mr. Kaiser that he and Mr. Moulton had at divers times, both prior and subsequent to the foreclosure of the property around which this litigation revolves, transferred title to other tracts of real estate in the name of other business entities other than the partnership involved in this case and in which the general partners were officers or shareholders, from said businesses into the names of these defendants and their wives. We conclude there could have been but one purpose for this line of inquiry and the argument of plaintiff's counsel which the trial court held prejudicially erroneous was for the sole purpose of following up on the evidence he had adduced in the belief that it would demonstrate that the defendants were attempting to so maneuver the title to their properties that any judgment obtained would not be collected. Whether a judgment is collectible is not a consideration for the jury. It was not an issue framed by the

pleadings and a jury should not be guided by the collectibility of a judgment in arriving at their verdict. While our research has led us to no case exactly on this point, the cases are legion where it has been held to be prejudicial error requiring reversal of a judgment where counsel told or inferred to the jury that the defendant was either not interested in the defense of the case or would not have to pay any judgment awarded because an insurance company was actually the one who would have to pay or satisfy the judgment. *U.S.F. & G. v. Safeco Ins. Co. of America*, 522 S.W.2d 809, 819[8] (Mo.banc 1975), *Murphy v. Graves*, 294 S.W.2d 29, 35[9] (Mo.1956), *Rytersky v. O'Brine*, 335 Mo. 22, 70 S.W.2d 538, 539[2] (Mo.1934). As the court in *Rytersky* supra, l.c. 540, said: "Whether a defendant does or does not carry liability insurance, whether he has paid for and is entitled to have recourse against an insurer, or how he is to raise the money to pay the judgment, has nothing to do with the trial of the case and the determination of the question of the defendant having been negligent or the amount of damages he has caused to the plaintiff." We are of the opinion that whether any judgment entered by a jury for breach of contract and damages sustained thereby is collectible is a matter not within the issues and should not be considered by the jury in rendering its verdict.

■ Plaintiff contends that defendants' objection came too late. However, even if true, that does not deprive the trial court from granting a new trial on the ground that the argument was prejudicial and deprived the defendants of a fair trial. The court in *Robbins v. Brown-Strauss Corp.*, 363 Mo. 1157, 257 S.W.2d 643, 648[4–6] (1953) said: "The trial judge was in an excellent position to gauge the effect of the improper and objectionable argument, and, if he deemed the overall effect to have been so prejudicial as to deprive plaintiff of a fair and impartial trial as he undoubtedly did, he had the duty to cause the entry of the new trial order, *although no objection had been made to such argument.*" (Emphasis supplied).

We find no abuse of discretion in the trial court's granting defendants a new trial on these grounds.

Having found one ground for the trial court's granting of a new trial we could conclude our review of the other ground for the trial court's order granting defendants a new trial. However, because the cause will be retried, we conclude that we should consider whether Instruction No. 3 as given by the trial court constitutes error, lest by our failure to dispose of that point it be concluded that we find no error therein.

Instruction No. 3, as given by the trial court, is as follows:

"Your verdict must be for plaintiff if you believe:

First, defendant did not complete the project known as County Fair and did not furnish monies required to complete the project over and above the amount loaned by plaintiff, and

Second, because of such failure, defendants' contract obligations were not substantially performed, and

Third, at the time defendants made either agreement they knew or should have known that plaintiff would rely thereon, and

Fourth, plaintiff did so rely thereon, and

Fifth, plaintiff was thereby damaged." MAI 26.02 (modified).

■ This instruction, MAI No. 26.02 is not intended for this kind of case. It is intended for use in situations where the existence and terms of the contract are undisputed and the sole question for the jury to decide is whether defendant has breached that contract, and if so, the damage resulting from said breach. *Varn Co. v. Hamiltonian Federal Savings & Loan Ass'n.*, 488 S.W.2d 649, 651[2] (Mo.1973). As we have concluded hereinabove, there are more than those two issues in this case. Further, as we understand plaintiff's theory of the case, its suit is a third party beneficiary suit based upon the Articles of Limited Partnership between K & M Investment Company and Laclede Development Corporation. While the Loan Agreement be-

tween it and the Limited Partnership was incorporated into the Articles of Limited Partnership and "made a part of this agreement" by Paragraph 9.1 and is germane to the intention of the parties and is thereby admissible, the instruction as given could be confusing and misleading by its reference to "either agreement" and those words would best be omitted, even though not prejudicially erroneous.

We affirm the order of the trial court awarding the defendants a new trial and remand this case for further proceedings not inconsistent with this opinion.

CLEMENS, P. J., and STEWART, J., concur.