**LACLEDE INVESTMENT CORPORATION,**
Plaintiff-Respondent,

v.

**Patricia A. KAISER, Executrix of the Estate of Jerry Kaiser, Deceased, and David Moulton, Defendants-Appellants.**

No. 40016.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 15, 1980.

Motion for Rehearing or Transfer to Supreme Court Denied March 14, 1980.

Application to Transfer Denied
April 8, 1980.

Edward P. McSweeney, St. Louis, for defendants-appellants.

M. E. Stokes, St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendants Jerry Kaiser and David Moulton appeal from a judgment in a court-tried case in favor of plaintiff Laclede Investment Corporation. The suit was grounded upon three theories: express breach by defendants of a loan agreement contract with plaintiff; promissory estoppel based on representations made by defendants which induced plaintiff to lend a limited partnership $425,000; and, recovery by plaintiff as a third party beneficiary for breach of a promise by defendants to complete construction of an apartment project in north St. Louis County, the purported promise being made in articles of limited partnership between Laclede Development Corporation (a separate corporate entity from plaintiff) as a limited partner and defendants as general partners.

The parties stipulated that plaintiff's damages, if it was entitled to recover, were $576,602.37 principal and accumulated interest. Judgment was rendered in that amount. Jerry Kaiser died in the course of the appeal and his executrix Patricia A. Kaiser was substituted as a party.

The judgment is reversed.

This is the second appeal in this case. In the first trial, after a jury verdict for plaintiff, the trial court ordered a new trial because of error in permitting prejudicial closing argument by plaintiff concerning the uncollectibility of any judgment which might be rendered.

This court affirmed in *Laclede Investment Corp. v. Kaiser*, 541 S.W.2d 330 (Mo. App.1976), holding there was no abuse of discretion by the trial court in granting a new trial. A detailed statement of the facts is included in that decision.

Kaiser and Moulton were partners in K & M Investment Company, a general partnership. In 1969, the partnership borrowed $1,860,000 from Roosevelt Federal Savings and Loan Association to construct the "County Fair" apartment project in north St. Louis County. This loan was secured by a first deed of trust on the apartment project real property which was owned by the general partnership.

Before the project was completed defendants were out of money. They learned through a real estate appraiser that Laclede Gas Company was embarking on a diversification program and might be interested in investing in real estate. Kaiser approached David L. Gardner, vice president, secretary and treasurer of Laclede Investment Corporation, for the purpose of negotiating a loan of money to be used to pay for the completion of the "County Fair" project. Laclede Investment, a subsidiary of Laclede Gas Company, was organized for purposes of managing the diversification program.

Although the initial meeting was with Mr. Gardner, most of the negotiations for the loan were carried on with Donald A. Novatny, a vice president of Laclede Investment and senior vice president of Laclede Gas Company. Kaiser, Moulton and Novatny negotiated during a period of approximately five months prior to June 12, 1970. On that date articles of limited partnership were signed by Kaiser, Moulton and Laclede Development Company, another subsidiary of Laclede Gas Company. The intent of the articles was "to convert and expand the existing K & M Investment

Company partnership into a limited partnership by the admission of Laclede Development Company as a Limited Partner and by the re-allocation of the partners' shares of profits and losses." For a $2500 investment Laclede Development became a 50% partner in the project which had an appraised value in excess of $2 million. Also signed was a loan agreement between Laclede Investment and K & M Investment Company, the new limited partnership. The loan agreement was made a part of the articles of limited partnership by reference. The articles, however, were not made a part of the loan agreement.

Laclede Investment loaned $425,000 to K & M Investment Company. Each note contained a clause relieving the makers from personal liability and declaring the sole remedy of the holder to be foreclosure of the deed of trust.[1] The makers of the note were defendants, the general partners in K & M Investment Company. The notes were incorporated into the loan agreement by express reference.

The $425,000 loan was insufficient to pay for completion of the project. Kaiser and Moulton spent an additional $160,000 on the project but never completed it. Eventually, Roosevelt Federal Savings and Loan foreclosed. The property was sold at foreclosure for $1,850,000, rendering Laclede Investment's second deed of trust worthless.

Laclede Investment never sued on the promissory notes themselves. It admitted that defendants were not personally liable on the notes because of the exculpatory language. Rather, plaintiff sued defendants for breach of their agreement to complete the project, claiming as damages the loss of its investment. The trial court in its conclusions of law found that Laclede Investment was entitled to recover on each of its three theories. This appeal followed judgment for plaintiff in the stipulated amount of damages.

■ Plaintiff's contention that it is entitled to recover because of express breach of the loan agreement need not detain us long. While we entertain substantial doubts that the loan agreement contains any promise to complete, it makes no difference whether or not such a promise was made. The notes, which are a part of the loan agreement, provide in clear, unambiguous, and precise language the only remedy available to plaintiff in the event of breach of the loan agreement. That remedy is by way of foreclosure of the security interest and specifically eschews personal liability against the makers of the notes—defendants. There is no basis for the conclusion, made by the trial court, that some other unexpressed remedy existed for breach of the loan agreement in view of the exculpatory language of the contract between the parties.

Plaintiff advances the theory that it is not seeking recovery on the notes but instead upon the contract. If this is a distinction, it is one without a difference. The notes are an integral part of the contract. The only provision for repayment of the loan is found in the requirement that notes be executed and in the notes themselves. Without the notes there was no obligation to repay the borrowed money. They were the consideration for the loan agreement. The notes limited the remedy of plaintiff to that specifically provided therein. The trial court erred in its legal conclusion that plaintiff was entitled to recover because of an express promise to complete.

■ Much the same is true of plaintiff's contention, and the trial court's conclusion, that plaintiff was entitled to recover under the theory of promissory estoppel. This conclusion was based upon promises, allegedly made prior to or contemporaneously with the execution of the loan agreement, that defendants would complete the "County Fair" project. Restatement of Contracts Sec. 90 (1932), sets forth the doctrine of

---

1. "No personal liability shall be asserted or be enforceable against the maker, it being intended that the sole remedy of the holder hereof be by the foreclosure of the Deed of Trust and Security Agreement by virtue of which the holder of this note may foreclose, possess, receive or recapture any or all of the property described in said instruments as being security for this indebtedness."

promissory estoppel. It is, in essence, based upon the theory that a promise which induces action or forebearance by the promisee can serve as a substitute for consideration upon such action or forebearance and thereby can become enforceable as a contract. It is similar to the doctrines of unilateral contract and equitable estoppel. Plaintiff, through the use of language lifted from cases, attempts to establish its applicability to the case at bar. But we are cited to no cases, nor have we found any, which have held the doctrine applicable to promises made in the inducement of a fully integrated contract as is here sought by plaintiff. Such a holding would directly conflict with the parole evidence rule. *South Side Plumbing Co. v. Tigges*, 525 S.W.2d 583 (Mo.App.1975). Here the alleged promise to complete was purportedly made to induce the execution of the loan agreement. There is no contention that the loan agreement did not represent the entire agreement between the parties and nothing of record indicates some other contract existed between these parties. That agreement was fully, completely, and unambiguously set forth in writing and carried full consideration from both sides. Promissory estoppel cannot be utilized to engraft thereon a promise not included in the contract.

Furthermore, even if we were to engraft such a promise to that contract that would not change the remedy for breach of that contract. Plaintiff does not contend and the record does not even hint that such alleged promise was accompanied by any promise to waive the exculpatory provisions concerning remedy. It matters not how many promises are added to the contract expressly, impliedly, inferentially, or by estoppel, the remedy for breach of those promises remains the same. Under that remedy plaintiff cannot recover against defendants. The trial court erred in its conclusion that plaintiff was entitled to recover against defendants on the basis of promissory estoppel.

We turn now to plaintiff's final theory of recovery—third party beneficiary contract. This theory is based upon a provision of the limited partnership agreement between defendants and Laclede Development Corporation in which defendants promised to complete the project.[2]

Initially it is necessary to deal with the status of our opinion in *Laclede Inv. Corp. v. Kaiser*, 541 S.W.2d 330 (Mo.App.1976), the appeal from the first trial of this case. In that case we held that the plaintiff made a submissible case on its theory of a third party beneficiary contract. The pleadings as to this issue and the evidence at the two trials are substantially the same. In those circumstances the doctrine of the "law of the case" normally applies and we are precluded from reconsideration of matters determined on the prior appeal.

The "law of the case" doctrine has two facets. Where a decision by a superior court is involved a lower court is absolutely bound by that decision and lacks jurisdiction to rule contrary to that decision upon retrial or upon a second appeal. *State ex rel. Curtis v. Broaddus*, 238 Mo. 189, 142 S.W. 340 (1911). If the initial decision is by the same court or a lower court than the one making the second decision the doctrine normally precludes reexamination of issues decided in the original appeal. *Mangold v. Bacon*, 237 Mo. 496, 141 S.W. 650 (1911). There are exceptions to the latter rule. As so aptly stated in *Mangold*, supra:

**2.** "9.1. The loan agreement between Laclede Investment Corporation and the partnership attached hereto as Exhibit '2' is hereby made a part of this agreement."

"9.2. The General Partners agree to complete the development contemplated by these Articles under the terms of the Construction and Disbursing Escrow Agreement by and between K & M INVESTMENT CO., Guaranty Land Title Company, Kaiser-Moulton, Inc. and Roosevelt Federal Savings and Loan Associa-

tion. The General Partners agree that the development shall be completed as rapidly as is practical. If any monies are required to complete the project over and above the principal amount stated in the loan agreement between Laclede Investment Corporation and K & M INVESTMENT CO., attached as Exhibit "2", such monies will be furnished by the General Partners in the form of additional capital contributions."

"An appellate court is a court for the correction of errors—its own as well as others. In correcting the errors of lower courts we do not proceed on the theory we make none of our own. . . ."

"Whether from grace or right when cogent and convincing reasons appear, such as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play, and it is our duty to re-examine and correct our own errors on the second appeal in the same case." 141 S.W. l.c. 655. *See also Hogan v. Kansas City Public Serv. Co.*, 322 Mo. 1103, 19 S.W.2d 707 (banc 1929) [1, 2]; *Murphy v. Barron*, 286 Mo. 390, 228 S.W. 492 (1921) [4].

Inherent in our original opinion in this case is a legal determination that Plaintiff is a third party beneficiary under the limited partnership contract. The question briefed by defendants on the first appeal was the effect of a limitation of liability contained in paragraph 15.1 of the partnership contract.[3] On that appeal defendants did not brief the contention, which is critical, that paragraph 9.2 does not make plaintiff a third party beneficiary.

■ We believe that as to that issue our prior opinion was incorrectly decided, that our prior decision on that issue is out of harmony with other decisions, that the issue was incorrectly decided out of inadvertence arising from inadequate briefing, that adherence to the incorrect ruling will cause manifest injustice to the rights of the parties, and such adherence will create a precedent having serious and unwarranted consequences to the law of contracts. It is our conclusion that this case presents an exception to the "law of the case" doctrine and that we are therefore free to correctly decide the issue.

■ Third party beneficiary is the nomenclature given to one who is not privy to a contract nor to its consideration but to whom the law gives the right to maintain a cause of action for breach of contract. *Stephens v. Great Southern Savings & Loan Ass'n*, 421 S.W.2d 332, 335 (Mo.App.1967). Several theories for allowing the third party beneficiary to recover have been developed and rejected. Annot., 81 A.L.R. 1271, 1283 (1932). Now, the doctrine prevails "on the strength of its reasonableness and necessity, rather than upon any preconceived general theory of law." 81 A.L.R. l.c. 1284.

■ Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action. The question of intent is paramount in any analysis of an alleged third party beneficiary situation. The intention of the parties is to be gleaned from the four corners of the contract, and if uncertain or ambiguous, from the circumstances surrounding its execution. *Uhrich v. Globe Surety Co.*, 191 Mo.App. 111, 166 S.W. 845 (1914) [2, 3]; *Dill v. Poindexter Tile Co.*, 451 S.W.2d 365 (Mo.App.1970) [18]. In *Stephens v. Great Southern Savings & Loan Assn.*, 421 S.W.2d 332 (Mo.App.1967) the question of intent was addressed as follows:

"So '[i]t is not every promise . . . made by one to another from the performance of which a benefit may ensue to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit *as its object*, and he must be the party *intended to be benefited.' And the intent necessary to establish the status of a third-party beneficiary is 'not so much a desire or purpose to confer a benefit on the third person, or to advance his interests or promote his welfare, but rather an*

---

**3.** "15.1. The General Partners shall not be liable to the Limited Partner for any mistake of law or fact, or of both law and fact, or for errors of judgment or for any loss of the Limited Partnership unless occasioned by actual fraud or gross neglect on the part of the General Partner or Partners."

*intent that the promisor assume a direct obligation to him.'"* [2, 3]. (Emphasis supplied).

The contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract and have the right to maintain an action on the contract. *Uhrich v. Globe Surety Co.,* supra, [1]; [4] *Burns v. Washington Savings,* 251 Miss. 789, 171 So.2d 322 (1965) [4]; *Computer Center, Inc. v. Vedapco, Inc.,* 320 So.2d 404 (Fla.App. 1975) [5]. Though the third party beneficiary need not be named in the contract, the terms of the contract must express directly and clearly, an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third party beneficiary is a member. Inasmuch as people usually contract and stipulate for themselves and not for third persons, a strong presumption arises that such was their intention, and the implication to overcome that presumption must be so strong as to amount to an express declaration. *Ison v. Daniel Crisp Corp.,* 146 W.Va. 786, 122 S.E.2d 553 (1961) [1–3]; *Martin v. Edwards,* 219 Kan. 466, 548 P.2d 779 (1976) [5, 6]. In other words, the court may not speculate from the language in the contract that the contracting parties wanted to make the plaintiff a third party beneficiary.

The Restatement of Contracts § 133 [5] (1932) adopted by the Missouri courts in *Mertens v. MGR Inc.,* 507 S.W.2d 433 (Mo. App.1974) divides beneficiaries of a contract into three classes and defines each class: donee beneficiary, creditor beneficiary and incidental beneficiary. Each definition is built upon and dependent for its meaning on the other two definitions. Thus, a person is a donee beneficiary "if it appears from the terms of the promise in view of the accompanying circumstances that the purpose [6] in obtaining the promise of all or

**4.** In *La Salle Iron Works Inc. v. Largen,* 410 S.W.2d 87 (Mo. banc 1966) the court distinguished *Uhrich, supra,* on the basis of the language in the bonds involved. It further stated that to the extent the opinion of Uhrich held contrary to that of La Salle it was no longer to be followed. Our review of the two cases does not reveal any inconsistency between the legal theories advanced in the two cases, only a difference in application of those theories to the language of the two bonds. That Uhrich still has validity for the legal principles therein set forth is recognized by the Supreme Court through its citing of the case in *Silton v. Kansas City,* 446 S.W.2d 129 (Mo.1969) [1]. Both La Salle and Uhrich dealt with construction bonds containing clear obligations to pay mechanics and materialmen. The question was whether such obligations were enforceable by those persons. Here, of course, the partnership agreement imposes no obligation to pay anyone.

**5.** § 133. DEFINITION OF DONEE BENEFICIARY, CREDITOR BENEFICIARY, INCIDENTAL BENEFICIARY.

(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds;

(c) an incidental beneficiary if neither the facts stated in Clause (a) nor those stated in Clause (b) exist.

(2) Such a promise as is described in Subsection (1a) is a gift promise. Such a promise as is described in Subsection (1b) is a promise to discharge the promisee's duty.

(3) Where it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee is to benefit a beneficiary under a trust and the promise is to render performance to the trustee, the trustee, and not the beneficiary under the trust, is a beneficiary within the meaning of this Section.

**6.** The Restatement uses the term "purpose" of the contract rather than "intent." *See* quotation on p. 9, *supra,* from *Stephens v. Great Southern Savings & Loan Ass'n,* 421 S.W.2d l.c. 335, on the intent requirement. Whether delineated as "intent" or "purpose" the necessary element is a contractual undertaking by the promisor to assume a direct obligation to the beneficiary.

part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary." The person is a creditor beneficiary if he is not a donee beneficiary and "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary . . . ." Finally, if the person is neither a donee beneficiary nor a creditor beneficiary, he is an incidental beneficiary. The first two classes of beneficiaries may recover, but the third class may not. *Stephens v. Great Southern Savings & Loan Ass'n, supra,* at [4, 5]. Restatement of Contracts §§ 135, 136, 147 (1932). Comment a. to Sec. 133 states:

> "A single contract may consist of a number of promises. One or more of them may require performance to the promisee; others *may require performance to persons not parties to the contract.* Of these latter promises, some may be of the type stated in Subsection (1a), others of the type stated in subsection (1b). *In other promises any benefit derived by a third person from their performance may be merely incidental.*" (Emphasis supplied).

If plaintiff can recover at all, it must do so as a donee beneficiary inasmuch as there is no duty or legal obligation (actual, supposed or asserted) owing to plaintiff by Laclede Development Company which connects the beneficiary with the contract. If plaintiff is merely an incidental beneficiary it cannot recover.

The right of the donee beneficiary to recover against the promisor is based upon the expressed intent of the promisee that the third party should receive the beneficial performance as his gift. 4 Corbin on Contracts § 782 at 87. Here there is no expression in the contract terms of the Articles of Limited Partnership showing an intent by either party therein to bestow as a gift on plaintiff the promise "to complete the development contemplated by these Articles under the terms of the Construction and Disbursing Escrow Agreement." Nothing in the partnership agreement purports to be a promise to anyone other than the parties to the agreement. Laclede Investment is not such a party.[7]

There is nothing in Sec. 9.2 of the limited partnership agreement which requires defendants to perform any promise to plaintiff. The only reference in that section to plaintiff identifies the source of the loan to the partnership and nothing in that section expressly, or even by implication, correlates the source of the loan with the promise to complete. The provision is simply a delineation of the obligations between the partners for the addition of capital to the partnership. The entire partnership agreement dealt with the interrelationship between the partnership and its members and Sec. 9.2 is only one portion of that overall contract. In *Mertens v. MGR Inc., supra,* we held that a much more identifiable promise to a class of persons did not under those circumstances create a third party beneficiary contract. *See also Nola v. Merollis Chevrolet Kansas City, Inc.,* 537 S.W.2d 627 (Mo.App.1976). Plaintiff bases its contentions upon certain testimony at trial concerning the intentions of the parties. Plaintiff contends, and the trial court found, that such testimony established the intent to create a third party beneficiary contract. Such testimony might be considered if we were dealing with an ambiguous provision. We are not. There is nothing in Sec. 9.2 which provides that defendants had undertaken some performance in respect to plaintiff.

Nor are we able to find the necessary specific intent required either in the contract or in the testimony at trial, even if we could consider the latter. At most the evidence indicates a generalized intention to advance plaintiff's interest or to promote

---

7. Although plaintiff and Laclede Development may be considered siblings, having been created by the same parent, they are not Siamese twins. Each is a separate legal entity and their relationship does not create either rights or responsibilities in this case different from those they would have if unrelated.

its welfare. But that testimony does not indicate an intent by defendants to assume a direct obligation to plaintiff in the partnership agreement.

The right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself. *Burns v. Washington Savings, supra,* [3, 4]. The necessity and wisdom of such a requirement is well illustrated by this case. By express, unambiguous language plaintiff relinquished any rights it had against defendants for loss sustained as a result of its loan. If it was the intention of the parties to obviate that relinquishment by Sec. 9.2 of a different contract between different parties covering a different relationship they could have said so directly and clearly. That they did not forces the conclusion that they did not intend to. If any conclusion can be drawn it must be that by incorporating by reference the loan agreement into the partnership contract the parties to the partnership agreement were aware of, and reaffirmed, the absence of personal liability of defendants to plaintiff.

We have alluded to the serious and unwarranted precedent involved in allowing plaintiff to recover in this case. If plaintiff, a financing corporation, is a third party beneficiary to this partnership provision, so presumably is the first mortgage lender, the general contractor, and every subcontractor, materialman and mechanic whose lien security has been damaged by failure to complete the project. Non-recourse financing is not an uncommon practice. It is a useful commercial tool. We should not place in the path of such financing the substantial danger that no matter how explicitly the parties to the financing express their intention, the courts will find that some other contract between different parties will supercede the express provisions by implication. Plaintiff made its bargain with defendants. It has lost money under that bargain. That fact should not allow plaintiff or the courts to change the bargain. The trial court erred in its conclusion allowing recovery by plaintiff on the theory of a third party beneficiary contract.

Judgment reversed with directions to enter judgment for defendants.

PUDLOWSKI, J., concurs.

SNYDER, P. J., dissents in separate opinion.

SNYDER, Presiding Judge, dissenting.

I respectfully dissent and would affirm the trial court judgment because the limited partnership agreement is indeed ambiguous and extrinsic evidence should be considered in determining the intent of the parties. The express provisions of the articles of limited partnership, together with evidence adduced at the trial, furnish substantial evidence that the parties intended for Laclede Investment Corporation, the respondent here, to be a third party beneficiary of the promise made by appellants to complete the development and to furnish any monies required to complete the project over and above the amount loaned by respondent.

The majority opinion concludes this case presents an exception to the "law of the case" doctrine. It finds the ruling of this court in the decision handed down on an appeal from the first trial of this case, *Laclede Inv. Corp. v. Kaiser,* 541 S.W.2d 330 (Mo.App.1976), to be incorrectly decided, out of harmony with other decisions and that adherence to the earlier incorrect ruling would cause manifest injustice and create a precedent having serious and unwarranted consequences to the law of contracts. In the earlier decision it was held that plaintiff made a submissible case on its third party beneficiary theory.

If the contract is ambiguous, as I believe it is, then the "law of the case" doctrine must apply, extrinsic evidence of the intent of the parties should be permitted and the trial court judgment should be affirmed.

In interpreting contracts, the court's duty is to ascertain the intention of the parties. When the language of a contract is plain and unambiguous it is the duty of the court as a matter of law to state its meaning. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973);

*House of Tools and Engineering, Inc. v. Price*, 504 S.W.2d 157, 160 (Mo.App.1973). It is only where the contract is ambiguous and not clear that resort to extrinsic evidence is proper to resolve the ambiguity. *J. E. Hathman, Inc., supra*, 264. Whether an ambiguity exists is a question of law for the court. *Slotkin v. Willmering*, 464 F.2d 418, 422 (8th Cir. 1972). An ambiguity will be found if the language is reasonably susceptible to different meanings looking at the whole instrument, including writings made a part of the contract by reference. *J. E. Hathman, Inc., supra*, 264; *Grantham v. Rockhurst University*, 563 S.W.2d 147, 150 (Mo.App.1978).

If the contract is found to be ambiguous and extrinsic evidence received, and if the evidence is conflicting or if different conclusions might reasonably be drawn from it, a question of fact is raised which must be decided by the court in a court-tried case or by a jury. *Commerce Trust Company v. Howard*, 429 S.W.2d 702, 705 (Mo.1968).

There is no dispute about the legal principles involved, either as to interpretation of contracts or the third party beneficiary theory. Admittedly if the contractual relationship here can be determined as a matter of law from the content of the instruments then it is not ambiguous and the judgment should be reversed, if as a matter of law plaintiff was not an intended beneficiary or was at best an incidental beneficiary.

My dispute is with the finding that the written contract is not ambiguous. The cases cited in the majority opinion lend very little aid to the solution of the ambiguity problem.

*Uhrich v. Globe Surety Co. of Kansas City*, 191 Mo.App. 111, 166 S.W. 845 (1914) concerned a performance bond in a construction contract which was interpreted by the court as a matter of law and is authority for the proposition that it is necessary to find an intent for the promisor in a contract to assume a direct obligation to the third party beneficiary in order for the third party to recover.

As a matter of fact, and as noted in the majority opinion, *Uhrich* was overruled to the extent that it was contrary by *La Salle Iron Works, Inc. v. Largen*, 410 S.W.2d 87 (Mo. banc 1966) in which the Missouri Supreme Court liberalized the third party beneficiary theory by allowing materialmen to recover on construction contract performance bonds when the bonds contain explicit promises by the principal to pay the costs of labor and material on construction projects. We are not dealing with a construction contract, but the promise of appellants to furnish any additional funds required and to complete the development can be compared to the promise of a contractor in a performance bond to furnish the funds to pay for labor and materials.

The bond contract terms in *La Salle Iron Works, Inc.* did not clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract and much less did they clearly express that the third party beneficiary had a right to maintain an action on the contract. In discussing performance bonds, referring to 77 A.L.R. 21 and 118 A.L.R. 57, quoting Professor Arthur L. Corbin in 38 Yale Law Journal 1 and 3, the court states at page 90 that "if there is an actual promise by the obligors to pay the third party, either by express words or by reasonable implication, there is no need to speculate for whose benefit the undertaking was made." In *La Salle Iron Works, Inc.*, the court construed the bond as evidence of an intent to confer a right of action upon materialmen against the surety.

The majority opinion cites *Dill v. Poindexter Tile Company*, 451 S.W.2d 365, 373 [18] (Mo.App.1970) apparently for the undisputed principle that a court "must ascertain and give effect to the intention of the parties as it is gleaned from within the four corners of the agreement and the surrounding conditions and circumstances." There was no third party beneficiary in *Dill*. However, the court there did permit extrinsic testimony of the parties as to the surrounding conditions and circumstances and as to their respective intentions.

Again, *Stephens v. Great Southern Savings & Loan Ass'n*, 421 S.W.2d 332 (Mo.App.

1967) is quoted on the question of intent with which I have no quarrel. *Stephens* is factually dissimilar but the third party beneficiary principles apply. The case concerned a loan agreement which was never carried out by the parties themselves. The original party to the contract could not have enforced it, much less a third party beneficiary.

The majority opinion speaks generally of ambiguity in referring to Article 9.2 of the articles of limited partnership and says flatly that respondent relinquished any right it had against appellants for loss sustained as a result of its loan, but otherwise it does not refer specifically to the contract sought to be enforced.

In the articles of limited partnership, which incorporated the loan agreement between respondent and the limited partnership, Laclede Investment Corporation is referred to by name in five very important articles which are paraphrased in part below:

Article 9.1. The loan agreement between Laclede Investment Corporation and the partnership is incorporated in the articles.

Article 9.2. Appellants agree to complete the project as rapidly as practical and further agree to provide any monies that are required to complete the project over and above the amount of the loan made by Laclede Investment Corporation.

Article 10.1. Appellants agree to make additional capital contributions based on net losses so long as any loans of Laclede Investment Corporation remain unpaid.

Article 10.2. The distribution of cash flow in a certain manner is agreed upon while any loans by Laclede Investment Corporation to the limited partnership remain unpaid.

Article 10.3. The cash flow of the limited partnership is to be divided in a different manner when all of the loans of Laclede Investment Corporation to the limited partnership have been repaid in full with interest.

Of course the loan agreement which is incorporated into the partnership articles by reference is a loan agreement between Laclede Investment Corporation and the limited partnership. To say that as a matter of law there was no intent to benefit Laclede Investment Corporation and that there was no ambiguity in the contract as to this issue is unreasonable at best. In fact, considering all the circumstances a case might be made that respondent was a third party beneficiary as a matter of law. At the very least, extrinsic evidence should be considered, as it was by the trial court, in accordance with the earlier ruling of this court, *Laclede Inv. Corp., supra.* When the extrinsic evidence is considered, there was substantial evidence to support the judgment of the trial court that the parties intended respondent to be a direct beneficiary of the contract.

In addition to the provisions of the contract paraphrased above, appellant Kaiser testified at the first trial as follows:

"Q: You signed an agreement which said if it [County Fair project] was not completed with funds available that you would put up the money, you and your partner here, would put up the additional monies to complete it, didn't you?

A: Yes, sir.

Q: And you knew that was in the contract when you signed it; didn't you?

A: Yes.

Q: And you put that there knowing that the people from Laclede Investment will rely on your integrity and honesty to abide by your obligations; didn't you?

A: Yes, sir.

Q: And you intended them to rely on that; didn't you?

A: Yes, sir.

Later, in the same series of questions, Kaiser testified in further response to questions asked by the attorney for Laclede Investment:

"Q: And you say, you say now you agreed to furnish monies necessary to complete the project, right?

A: Yes.

Q: You intended that Laclede Investment and Laclede Development would act in reliance on that; right?

A: Yes.

Q: In other words, they are not going to come up with $400,000 or $500,-000 if you are going to walk away from the project and not let it get completed are they? You wouldn't do that; would you?

A: No.

Q: And you wouldn't expect anybody else in their right mind to do it; would you?

A: No."

On redirect examination, Kaiser again acknowledged the promise to complete the project to the attorney for Laclede Investment:

"Q: And after you decided it might take $500,000.00 to complete the project that's when the contract was modified into its final form and you and your partner sat down there and said, 'If it takes anything over and above Laclede's money to complete this project, we will put it up and we will put it up as capital contributions;' is that not so?

A: Yes, sir."

Kaiser's testimony at the first trial was received in evidence at the second trial by stipulation of the parties. Kaiser testified at the second trial to the accuracy of his testimony during the first trial.

At the second trial, Kaiser again admitted the obligation imposed by Article 9.2 to the attorney for Laclede Investment:

"Q: When you signed this agreement, loan agreement, and the Articles of Limited Partnership which contained reference to this document and incorporated it by reference, you knew that all throughout the transactions there was an obligation imposed upon you and your partner to furnish money to complete the project free and clear of liens; is that not true?

A: Yes."

It does not require speculation to arrive at the conclusion that respondent was an intended beneficiary. There would have been no loan at all without the articles of limited partnership. This is obvious from the documentary evidence itself. No additional testimony is needed to support this reasoning.

A Mississippi case, *Burns v. Washington Savings*, 251 Miss. 789, 171 So.2d 322 (1965) is cited by the majority for the proposition that the right of the third party beneficiary to maintain an action on a contract must spring from the terms of the contract itself. There is no dispute. The statement is true unless the contract is ambiguous as the articles of limited partnership were.

In *Burns*, however, the court sets forth three factors which should be present if a third party beneficiary is to be allowed to recover: (1) when the terms of the contract include the third party either by name or as one of a specified class; and (2) the third party was within the intent of the terms so used, and the third party will be within the contract's benefits if (3) the promisee had in fact a substantial, articulate interest in the welfare of the third party in respect to the subject of the contract. The three conditions are met by respondent. It is named in the very important sections of the contract which contain the promise of appellants relating to completion and additional funds, additional capital contributions by appellants and the distribution of cash flow during the period loans by respondent remained unpaid.

Respondent was within the intent of the terms by being named in those paragraphs of the articles; and it is indisputable that the promisee (Laclede Development Company) had a substantial and articulate interest in the welfare of the respondent in respect to the subject of the contract, i. e. the development itself and particularly the

completion of the project and the providing of additional funds if required.

No cases have been cited with which an affirmance would be out of harmony. *Mertens v. MGR Inc.*, 507 S.W.2d 433 (Mo.App. 1974) is cited as denying third party beneficiary relief in a case where there was a much more identifiable promise to the purported beneficiary. Not so. Of course it would be almost impossible to find a case with a fact situation similar to the one we have here and the *Mertens* facts are distinguishable. But even more distinguishable is the intent factor. In *Mertens* the contract was among three shareholders of a corporation, one of whom bought out the other two. Under the terms of the agreement the purchaser of the shares agreed to pay certain outstanding corporate indebtedness. A creditor not named in the contract who claimed to be a third party beneficiary sued the purchaser of the shares. The intent of the contracting parties was to hold harmless the selling parties from any liability for a bank loan which they had personally guaranteed and other debts of the corporation. This court held there was no indication of an intent to make a gift or confer a right on the plaintiffs. The case at bar is different in many respects. The articles of partnership read alone are ambiguous as to the intent of the parties. Therefore, evidence of the surrounding circumstances and facts should be admissible to permit the court to resolve the ambiguity.

The express unambiguous language respondent used in relinquishing any rights it had against appellants for loss sustained as a result of its loan was applicable only to the obligation on the note. The reliance of the majority opinion on the language in the note is misplaced. The note was not part of the articles. In many credit arrangements notes may be uncollectible but additional security assures the lender against loss. In this case the intent of the parties was to provide additional security to the respondent by the appellants' promises to complete the project and furnish additional funds if they were required. This is what the trial court found after hearing all the evidence.

I do not share the concern of the majority as to the establishment of an unwarranted precedent. It would require a tortured analysis of the facts to include the first mortgage lender, the general contractor, subcontractors and materialmen as a class of third party beneficiaries. The first mortgage lender is mentioned in the partnership agreement only incidentally as a party to a separate construction and disbursing escrow agreement and the others not at all. They did not lend money based on the articles of partnership and loan agreement and without question would be incidental beneficiaries. An affirmance in this case would not endanger the practice of non-recourse financing.

A jury in the first trial found for respondent. The judge in the second trial from which this appeal is taken found for respondent. I would also find for respondent and affirm.